JAMES BLACKBURN AND WAYNE BLACKBURN, RESPONDENTS, v. EDWARD GAYDOU, APPELLANT.—245 S. W. (2) 161.

Springfield Court of Appeals.   Opinion filed December 26, 1951.

*Sater & Monroe,* Attorneys for Appellant.

*Neale, Newman, Bradshaw, Freeman & Neale* and *Ransom A. Ellis, Jr., Flavious B. Freeman,* and *Ransom A. Ellis, Jr.,* Attorneys for Respondents.

McDOWELL, J.—This is an action for damages for permanent injury to plaintiffs' land and for the destruction of crops caused by overflow waters. The cause was tried before a jury and judgment rendered for plaintiffs in the sum of $1500.00, from which judgment defendant appealed.

Plaintiffs' petition alleged that they and the defendant owned adjoining farms in Lawrence County, Missouri; that a certain stream of water, known as Center Creek, flows along the north side of both the defendant's and plaintiffs' land, in a westerly direction; that the natural course and flow of the surface water on both the plaintiffs' and defendant's land is toward Center Creek. The petition then states:

"Plaintiffs further state that while they and defendant owned the land hereinbefore mentioned, defendant caused a dike to be constructed along the boundary line between plaintiffs' and defendant's land; that said dike began at the south bank of Center Creek and extended south from said creek a distance of approximately a quarter of a mile; that said dike was constructed at right angles to the natural channel and course of flow of said Center Creek; that the purpose of said dike was not to ward off the surface water from defendant's land, but was erected to confine and collect said water upon defendant's land so that silt would be deposited thereon, and was so designed and constructed that it collected and confined the surface water, both from the overflow of said Center Creek, and from the surrounding land, in a great body upon the land of the defendants; said dike being so constructed that it was open on the south end, allowing the collected and confined water to flow unobstructed around said south end, onto the lands of the plaintiffs. That said dike so obstructed the natural course and flow of the surface water that it caused said water to flow in a southerly direction, which was contrary to its natural course and flow, and to spill upon plaintiffs' land in increased volume and with concentrated force and velocity; said water being caused to flow upon plaintiffs' land where it had never naturally flowed before.

The petition then stated that because of the wrongful and negligent acts of the defendant in permitting the collected waters to flow in a body upon plaintiffs' land that the land was permanently damaged; that the grass and sod thereon was washed up and 200 bushels of corn washed down and prayed for $16,000.00 damages.

The petition contained a second count in equity for an injunction.

Defendant's answer is a general denial of the allegations in plaintiffs' petition and affirmatively pleads that plaintiffs and defendant agreed to jointly erect the levee or dike in question and that after the erection of same, plaintiffs failed and refused to pay their part of such construction.

The answer pleads that the dike is a benefit to both plaintiffs' and defendant's land and specifically denies that plaintiffs have been damaged.

Plaintiffs' reply denies the affirmative allegations in defendant's answer.

The verdict of the jury was for plaintiffs in the sum of $1500.00 on the first count. The court entered judgment on the verdict in favor of plaintiffs for $1500.00 on the first count and found for defendant on plaintiffs' second count. Defendant appealed.

We are, therefore, concerned only with the action for damages as contained in the first count of plaintiffs' petition.

In this opinion we will refer to the appellant as defendant and to the respondents as plaintiffs, being the position they occupied in the trial court.

We here make a brief statement of facts necessary for a proper decision of the issues involved.

Plaintiffs and defendant were owners of adjoining lands in Lawrence County, Missouri. Plaintiffs owned 260 acres south of Center Creek and defendant owned 220 acres adjoining the lands of plaintiffs on the east, south of Center Creek. Center Creek was a stream about 50 feet wide, running from east to west, forming the north boundary lines of both properties. Plaintiffs had about 80 acres of low bottom land extending from the south bank of the creek south to the uplands of plaintiffs' farm. About 20 acres of this bottom, immediately adjacent to the creek, was in sod and grass and 60 acres further south were lands that were cultivated by plaintiffs.

The land of defendant, which adjoined plaintiffs' land and which extended up to the south bank of the creek, was also low, bottom land. It is admitted that during rainy seasons Center Creek would overflow its banks and the waters would pass over defendant's land onto plaintiffs' land and on across plaintiffs' land to other farms. Where the water crossed defendant's land it would wash the top soil away. The natural flow of the surface waters on both defendant's and plaintiffs' land was north toward the creek.

In June, 1947, defendant erected a dike entirely upon his own land, along the property line between plaintiffs and defendant. This dike was made of earth and started about 150 feet south of the creek bank and extended about a quarter of a mile to a point where a tract of 20 acres belonging to one, McHardie, joined defendant and plaintiffs on the south and then turned east about 60 feet along the property line between the lands of defendant and McHardie. This dike was about six feet high and rose to about eight or nine feet in the middle and then dropped off to about three feet at the south end. The base was about 30 or 35 feet thick and the top was wide enough for a bulldozer to drive thereon. The purpose of the dike was to hold the surface waters to prevent the washing of defendant's land

and to catch the silt thereof. In the construction of this dike dirt was removed from about 60 feet of land along the east side thereof, making a low depression or drain where some water stood after floods.

Plaintiffs' evidence was to the effect that while Center Creek did overflow plaintiffs' 80 acres on occasions of heavy rain, the overflow on those occasions lacked nearly a half quarter of a mile coming to the point where the south end of the dike is now located. However, plaintiffs' testimony does disclose that from a point about the center of the dike there is a depression across plaintiffs' 80 acres of land lower than the land at the creek bank where overflow waters pass across said 80 and that this depression extends to the south as it passes toward the west side. Plaintiffs' testimony also discloses that before the erection of the dike in question, these surface waters did wash parts of plaintiffs' 80 acres of land near the creek and cause gullies to form therein. Some corn was planted near the creek the year before the flood in question. The evidence shows there was a branch which comes from the south and east across the McHardie land and passes onto plaintiffs' land and that, in order to ward off this surface water, plaintiffs had constructed a ditch along the east side of their land some 45 years ago, which carried such surface waters north to the creek.

In January, 1950, a heavy rain took place. Both plaintiffs' and defendant's testimony is to the effect that it was an unusual rain for that community. Some of plaintiffs' witnesses testified they had seen the overflow from the creek as high before. Plaintiffs' testimony is to the effect that, during this rain, Center Creek overflowed its banks and the surface water was impounded by the dike to such a height as to cause it to flow south around the end of the dike onto the McHardie land and then across plaintiffs' 80 acres where it never had flowed before, damaging about 15 or 20 acres of plaintiffs' land by washing a part of the land as deep as it had been plowed and making gullies thereon and by depositing silt and other material. Plaintiffs testified they had about three acres of corn which was ungathered that was washed down and practically destroyed. Plaintiffs' testimony also is to the effect that some of the grasslands on the north, next to the creek, were washed out and injured.

There was some evidence that the opening left between the north end of the dike and the north bank of Center Creek was insufficient to carry the water and retarded the flow of Center Creek, causing the surface waters to rise higher behind the dike.

Certain exhibits, numbered 5, 7 and 11, pictures of a flood occurring after suit was brought, were admitted by the court in evidence over the objection of the defendant.

We take this statement from plaintiffs' brief:

"During the January overflow, the surface water coming off of appellant's land on to that of the respondents was flowing from north

to south, contrary to the natural flow and drainage. Respondents' exhibits 5, 7, 8, 10, and 11 were admitted into evidence after testimony was given that they were a fair representation of the amount of water coming around the south end of the dike before the lawsuit was filed.''

Plaintiffs' evidence as to damages to the land was that plaintiffs' farm was of the value of $75.00 to $100.00 an acre before the flood and $25.00 an acre afterwards; that the water flowed around the south end, was about two and one-half to three feet deep.

As to the surface waters before the dike was erected plaintiffs gave this testimony:

''Q. Now the water previously at the floods and before this dike was put in, it came off on down through Gaydou's farm and onto you, did it? A. Had to.

''Q. And the amount and quantity and velocity the water came onto you depended upon the amount of it that was out of the banks of Center Creek, didn't it? A. That's right.

Plaintiffs testified that defendant did talk to him about building the levee before it was built and that he had suggested to defendant to put up some wire to check the velocity of the surface waters; that he had told defendant he didn't know whether a dike would work or not and admitted he said he didn't have any money to help pay for same. He admitted he knew the dike was going to be constructed and was being constructed but he denied he ever consented to the building thereof or agreed to help build the same. He testified that about two and one-half acres of his land north of Center Creek was damaged and about 30 acres in all.

The first assignment of error is that the trial court erred in not sustaining the motion for a directed verdict submitted at the close of all the testimony.

Under this assignment of error it is contended that the alleged damages occurred by reason of surface water only, and the petition does not allege facts showing an abuse of the rights of defendant to protect his lands from surface waters, and the testimony does not show that the defendant, in the exercise of his right to protect himself against surface water, negligently constructed said dike and that the same was not constructed in the usual, careful manner and within reasonable limits.

Plaintiffs' petition alleges the following negligent acts upon which their claim for damages rests: that defendant erected a dike to confine and collect surface waters upon his land in a great body; that this dike was left open at the south end allowing such collected water to flow around south end onto plaintiffs' land; that the dike was so constructed as to obstruct the natural flow and course of such surface waters and caused it to flow in a southerly direction and spill upon plaintiffs' land in increased volume and with concentrated force and

velocity and to flow upon plaintiffs' land where it had never flowed before.

It is the contention of plaintiffs that a landowner cannot accumulate surface water on his land and precipitate it in increased volume upon his neighbor's land to the latter's injury.

Defendant's contention is that surface water is a common enemy and a dominant owner may ward off such waters into the lands of an adjacent owner provided he does not do it recklessly.

In Keener v. Sharp, 341 Mo. 1192, 111 S. W. 2d 118, 120, the Supreme Court states the following principle of law:

" 'The law seems to be well settled in Missouri that surface water is a common enemy which every man may ward off his land and thus throw it on an adjacent or lower owner, provided he does not, in warding it off, unnecessarily collect it and discharge it to the damage of his neighbor. The law is also well settled that water merely overflowing the banks of a river during a flood or freshet and spreading out over the bottom lands is surface water and thus falls within the rule regarding same.

" 'It is also settled law in Missouri that a natural stream cannot be dammed up nor the waters from its beaten path or bed diverted to the damage of property without compensation therefor. * *' "

This case is cited by plaintiffs as authority for the proposition that a landowner cannot accumulate surface water on his land and precipitate it in increased volume upon his neighbor to the latter's injury. This case is not in point for the reason that the facts in the Keener case relate to the damming up of a natural stream or drainage ditch. We think there is no such question here. Plaintiffs' petition is not based upon the proposition that Center Creek was dammed up or obstructed but upon the fact that surface waters were impounded and cast in a body upon plaintiffs' land.

The rule of law laid down by the court, however, does hold. that in warding off surface water, one cannot unnecessarily collect it and discharge it to the damage of his neighbor. Schalk v. Inter-River Drainage Dist., Mo. App., 226 S. W. 277.

Polich v. Hermann, Mo. App., 219 S. W. 2d 849, involved a case where the owner of land subject to a driveway easement dumped dirt and rocks raising the grade of the driveway so that water was discharged upon adjoining lands in violation of an agreement of the parties and causing the waters to flow where they would not naturally have flowed. It was contended by the defendant in this equity case that overflow or surface water is a common enemy and a dominant owner may ward off such waters onto the land of adjacent or lower owners. The court held that under proper facts this is the rule of law but held that the facts in the case did not show conditions of mere overflow of surface waters from higher to lower lands but the court said, l. c. 854:

"On the contrary, it shows actions and conduct and things done by defendants in connection with the maintenance of their side of the driveway which changed the natural 'lay of the land' and caused surface water to overflow in abnormally large quantities from defendants' side of the driveway onto plaintiffs' side and to carry with it weeds and debris to such an extent as to clog up the mouth of the sewer on plaintiffs' side of the driveway, thereby causing the water to overflow into plaintiffs' basement. One of the cases cited by defendants in support of their contention on this point is Keener et al. v. Sharp et al. Defendants in citing this case have failed to take notice of the exact language of our Supreme Court. The Court said: 'The law seems to be well settled in Missouri that surface water is a common enemy which every man may ward off his land and thus throw it on an adjacent or lower owner, *provided he does not, in warding it off, unnecessarily collect it and discharge it to the damage of his neighbor.*' * * * (Emphasis ours.)"

On page 855 of this case the court lays down the following law:

"The general rule of law covering the respective rights and duties of adjoining land owners is that 'a landowner cannot collect surface water into an artificial channel or volume, or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter. This is true although no more water is collected than would have naturally flowed upon the property in a diffused condition, for it is evident that while a given piece of land may receive a large amount of surface water without injury thereto when it flows thereon from natural causes, yet when collected and discharged in considerable volume at a given point, it may become very destructive and injurious.' 27 R.C.L., Section 79, pages 1152 and 1153.

"The rule has also been stated as follows: '* * * an upper owner has no right to increase materially the quantity or volume of water discharged upon the lower estate; nor may the upper owner discharge water in a different manner than it would usually and ordinarily have gone in the natural course of drainage, * * * the upper owner may not accelerate the flow where it would result in injury to the lower proprietor.' 67 C. J., Section 299 (2), pages 875-877. To the same effect is the holding in Ready v. Missouri Pac. Ry. Co., 98 Mo. App. 467, 72 S. W. 142."

In Funke v. St. Louis-San Francisco Ry. Co., Mo. App., 35 S. W. 2d 977, this court stated the principle of law that the defendant had a right to protect itself from surface water but it had no right to allow that water to collect on its premises and then discharge it at one point in a body onto plaintiff's premises to his hurt.

The same principle of law is decided in Tucker v. Hagan, Mo. App., 300 S. W. 301.

In White v. Wabash Railroad Co., Mo. App., 207 S. W. 2d 505, it is held that a dominant proprietor in his fight against surface water cannot collect surface water into a concentrated area and discharge it by artificial means in a large volume upon the servient estate at a point where there is no natural drain on the servient estate to carry it away.

We quote from this opinion on page 509:

"* * * In other words, the dominant estate does not permit the surface water to follow the natural contour of the land and flow onto the servient estate in a multitude of places, but rather collects the same into a concentrated area and discharges it in a large volume upon the servient estate at a point where there is no natural drain on the servient estate to carry it away."

Under the authorities and law above cited we hold plaintiffs' petition stated a claim and that there was substantial evidence in the case to support the allegations of the petition, to-wit: that defendant had, by artificial means of a dike, collected surface waters in a large body and by such artificial means had cast it upon plaintiffs' land where it had not flowed before in a body to plaintiffs' damage. Certainly the testimony of plaintiffs is to the effect that this dike had prevented the surface waters from entering plaintiffs' land at many places as it had done before but had concentrated the same and cast it in a body upon plaintiffs' land. We find against defendant on his first assignment of error.

Defendant's second assignment of error raises a more serious contention.

Under this assignment of error defendant contends that the instruction directs a verdict and attempts to submit the issues on negligence in the construction of a dike but does not hypothecate the facts from which the jury could find the defendant negligent. This assignment of error also states that the instruction assumes that the construction of a dike under any and all conditions was a violation of the rights of plaintiffs and does not take into consideration the defenses.

Instruction No. I reads as follows:

"The court instructs the jury that if you find and believe from a preponderance of the evidence, as defined in another instruction, that during the year 1947 plaintiffs were the owners of the land mentioned in evidence and that defendant owned the land immediately to the east thereof; and if you further find and believe from the evidence that during that year the defendant constructed or caused to be constructed a dike upon his land which began south of the south bank of Center Creek and extended south approximately one fourth of a mile along the property line of plaintiffs and defendant, and that to so construct said dike was negligence, as defined in another instruction, if so; and if you further find and believe from the evidence that defendant knew or should have known that to so construct

928

said dike would cause or was likely to cause overflow water from Center Creek and other surface water to be collected and diverted around the south end thereof onto plaintiffs' land and cause them damage, and,

"If you further find and believe from the evidence that such negligence, if any, directly caused or contributed to cause overflow water from Center Creek and other surface water to be collected and diverted around the south end thereof, onto the land of the plaintiffs during the month of January, 1950, and prior to the filing of this suit; and if you further find and believe from the evidence that plaintiffs were damaged thereby, your verdict will be for the *plaintiff*, and against the defendant."

In the recent case of Yates v. Manchester, 358 Mo. 894, 217 S. W. 2d 541, 542, the Supreme Court stated the law thus:

" 'It is the settled rule that an instruction purporting to cover the whole case and authorize a verdict should require the finding of all the facts necessary to sustain the verdict. Negligence being usually a question for the jury, an instruction should set out the facts, supported by the evidence, relied on to show the acts of negligence so the jury may determine whether or not the commission of such acts was negligence.' Carson v. Evans, 351 Mo. 376, 173 S. W. 2d 30, 32."

The acts of negligence, relied on by plaintiffs in their petition, are as follows:

That the defendant erected a dike along the boundary line between plaintiffs' and defendant's land at right angles to the natural flow of Center Creek; that said dike collected and confined surface water, both from the overflow of Center Creek and surrounding land, in a great body upon defendant's land; that this dike was open at the south end and that it so obstructed the natural course and flow of the surface water that it caused it to flow in a southerly direction, contrary to its natural flow and to spill upon plaintiffs' land in increased volume and with concentrated force and velocity and where it had never naturally flowed before.

Plaintiffs' evidence supported the allegations in their petition as herein set out. Instruction No. I in the first part thereof, tells the jury that if they find and believe from the evidence that defendant constructed or caused to be constructed a dike upon his land approximately a fourth of a mile long along the property line of plaintiffs and defendant and that to so construct said dike was negligence as defined in another instruction. This part of the instruction was followed by a semicolon and then the instruction reads: "if you further find and believe from the evidence that defendant knew or should have known that to so construct said dike would cause or was likely to cause overflow water from Center Creek and other surface water to be collected and diverted around the south end thereof onto plaintiffs' land and cause them damage, * *." This allegation was followed by a comma

and then the instruction told the jury that if they find such negligence directly caused or contributed to cause overflow waters to be collected and diverted on plaintiffs' land during the month of January, 1950, and plaintiffs were damaged thereby, their verdict would be for plaintiffs. We find this instruction purports to cover the whole case and should have required the finding of the facts relied upon by plaintiffs in their petition to constitute negligence and that it wholly fails to do so. An instruction cannot tell the jury that if they find the defendant was negligent their verdict will be for plaintiffs. That would merely turn the jury loose with a roving commission to return a verdict without any specific findings of fact upon which to predicate a finding of negligence.

The facts that plaintiffs relied upon to constitute negligence on the part of defendant and for recovery in this action were that the dike was so constructed as to obstruct the natural course and flow of the surface water coming from Center Creek and surrounding land and that it collected such surface water in a great body upon the land of the defendant and caused it to flow in a southerly direction, which was contrary to its natural course and flow and to spill upon plaintiffs' land in increased volume and with concentrated force and velocity; that said water was caused to flow upon plaintiffs' land where it had never naturally flowed before. None of such facts are required to be found by the jury.

We think the instruction is very confusing. In the first part, as we mentioned, after setting out the manner of the construction of the dike, the instruction says that if the jury finds that to so construct said dike was negligence as defined in another instruction. The other instruction merely gives the technical definition of negligence. Then this instruction submits an issue to the jury which is not in the pleadings and is not essential to recovery. That is, if the jury find that the defendant knew or should have known that to so construct said dike would cause the surface waters to be diverted onto plaintiffs' land and cause damage.

Even under the common law the dominant proprietor, in his fight against surface water, could not collect the same in a large body by artificial means, and discharge it upon the servient estate in an increased volumn. White v. Wabash Railroad Co., 240 Mo. App. 334, 207 S. W. (2d) 505, 509, and cases cited therein.

In Tucker v. Hagan, supra, p. 304, the court states the law thus:

"There is clearly no merit to the criticism that the jury was not required to find that the ditch had been negligently constructed and maintained. It must be understood that the gist of plaintiff's cause of action was not defendant's negligent act in connection with a lawful attempt to improve and reclaim the surface of his land, but was rather his wrongful act in discharging the water upon plaintiff's crops in

greater volume than would have been the case had the water been left free to seek its natural course of drainage."

Had Instruction No. I in the case at bar hypothecated the question of negligence upon the facts in issue, that is, that this levee obstructed the natural flow of the surface water in question; that it collected such surface waters in a large body; that it caused the surface waters to flow in a direction contrary to the natural flow and to flow in a body at an accelerated speed or velocity and in concentrated amount, then the jury would have had a guide in determining the question of negligence and liability. In other words, the question of negligence must be predicated upon facts and not left to speculation and guess work. The answer in this case denies that the surface waters were ever caused to flow in a direction that they never naturally flowed before. It denies that the waters were cast in a body and at such accelerated speed upon plaintiffs' land so as to damage it and pleads affirmatively that plaintiffs' lands were subject to overflow and that the waters complained of were waters which naturally flowed thereon. This instruction wholly fails to properly submit the issue of negligence to the jury under the pleadings and the evidence.

Plaintiffs cite Kiger v. Sanko, Mo. App., 1 S. W. 2d 218, which they claim is an authority to support the instruction.

The instruction given in this case is found on page 221 of the opinion. We quote a part thereof to show that the instruction did require facts to be found upon which negligence was based:

" '* * * and if you find and believe from the evidence that the surface water falling upon and accumulating on the lands of the defendants was thereby caused to form in a large body and to be discharged upon the lands of the plaintiffs at a place where it would not have naturally flowed and to the injury and damage of the lands of plaintiffs and the improvements thereon, then your verdict must be for the plaintiffs.' "

The instruction is based upon facts from which the jury might find negligence.

Plaintiffs cite Tucker v. Hagan, supra. This case in no way conflicts with the well established law that an instruction must be predicated upon facts. This case went off on demurrer to the evidence and the court stated the law that it was not permissible for a dominant proprietor, in the exercise of his undoubted right to fight against surface water, to collect the same in a large body, conduct it by artificial means, and discharge it upon the servient tenant in an increased volume.

In passing upon an objection to an instruction because the instruction submitted negligence without predicating it upon a finding of facts, which would entail liability upon defendant, the court says, on page 304 of the opinion:

"* * * It must be understood that the gist of plaintiff's cause of action was not defendant's negligent act in connection with a lawful

attempt to improve and reclaim the surface of his land, but was rather his wrongful act in discharging the water upon plaintiff's crops in greater volume then would have been the case had the water been left free to seek its natural course of drainage. Such latter hypothesis was duly submitted to the jury in both of the instructions * * *''

This undoubtedly is the law but the case at bar did not submit the issues in Instruction No. I upon the hypothesis of the wrongful acts of defendant in discharging the water in question upon plaintiffs' land because such acts prevented the water from freely flowing in its natural course, etc.

Plaintiffs cite Henderson v. Dolas, Mo. Sup., 217 S. W. 2d 554. This is a landlord and tenant case, which held that in determining the sufficiency of an instruction it must be read and considered as a whole, and isolated phrases may not be selected and considered independently of the context in which they appear. This case, on page 556, cites the rule of law taken from Carson v. Evans, 351 Mo. 376, 173 S. W. 2d 30, 32. It is that rule of law that we quoted from above and which we now hold plaintiffs have violated in their instruction No. I.

We have read all of the other cases cited by plaintiffs and we hold that Instruction No. I is erroneous and constitutes reversible error. The error therein is not cured by the other instructions.

The third assignment of error complains of Instruction No. V given at request of plaintiffs. This instruction tells the jury that in considering the damage done to plaintiffs' lands, if any, that if they believe and find from the evidence that plaintiffs' lands suffered permanent damage by reason of overflow water discharged thereon, then the measure of the damage would be the difference between the market value of the land immediately before the diversion of such water and the time of the filing of the suit but not to be more than sued for in plaintiffs' petition.

The first objection to this instruction is that it submits a question of law as to whether or not the damages were permanent and in no way informs the jury what facts it could find the damages permanent. Secondly, defendant complains the evidence does not support a finding of permanent damages and that the instruction submits a wrong measure of damages. This allegation of error also complains of the introduction of evidence as to permanent damages. We think this objection is well taken.

In Shelley v. Ozark Pipe Line Corp., 327 Mo. 238, 37 S. W. 2d 518, 521, the court states the following rule of law:

''The reason for this rule is as follows: A plaintiff should not be permitted to recover future damages that may never be sustained. A defendant should not be required to pay for a permanent injury on the theory that he will continue to illegally inflict injury upon plaintiff. The rule is well stated in Sutherland on Damages (3d Ed.) vol. 4, p. 3034, quoted in Norfolk & W. Ry. Co. v. Allen, 118 Va. 428, 87 S. E. loc. cit. 561:

" 'In all cases of doubt respecting the permanency of the injury the courts are inclined to favor the right to bring successive actions. Otherwise, the effect would be to give the defendant, because of his wrongful act, the right to continue the wrong; a right equivalent to an easement. A right to land cannot be thus acquired. On the other hand, such a principle would involve the injustice of compelling the defendant to pay for a perpetual wrong, which he would perhaps put an end to at once on the adjudication that the erection is a nuisance.' "

In the case at bar the defendant could easily remove the dike in question. He could increase the height of the dike at the south end and continue to the east so as to wholly prevent further injury or successive action. This theory was recognized by plaintiffs when they brought this lawsuit. They, in a second count to their petition, asked the court for a mandatory injunction requiring the removal of this dike. Under the evidence in this case there is no question but what the overflow for which plaintiffs seek damages was one of the biggest rains ever had; that the overflow waters did not collect in such a body as to overflow the levee but that the waters were caused to go around the levee. There is nothing in the evidence to show that this error in constructing the levee could not be remedied in the manner above stated and, therefore, it would be wholly unnecessary to find from the evidence in this case that the damages were permanent, which finding would forever bar plaintiffs from bringing future actions.

The damage is not continuous. It seems that this dike had been erected in 1947, and no injury had happened until January, 1950. The injury is, therefore, intermittent and recurrent and not continuous. The cause thereof can be altered at slight expense and trouble so as to terminate the injury or it could be abated by judicial process. The greater part of the land of plaintiffs was overflow land. Approximately 15 acres of the 80 acres in question was damaged.

In Blankenship v. Kansas Explorations, 325 Mo. 998, 30 S. W. 2d 471, 476, the court, discussing the question of permanent injury, made this statement:

"In Pinney v. Berry, the plaintiff complained of the erection and maintenance of a dam across a creek which caused the water to flow up a branch on plaintiff's land, cutting off communication with a part of his land, filling the branch with mud, leaves, etc., and creating a nuisance which injured the health of his family. The plaintiff was permitted to prove that his property was rendered less valuable per acre and that a spring was destroyed, and the value of the spring. The petition contained no allegations as to the destruction of a spring, and objection to the evidence was made upon that ground. No instructions were asked or given by either party. It was ruled that the trial court erred in allowing the plaintiff to prove the value of his land before and after the creation of the nuisance. After stating what was said to be the rule of damages for negligent injury to real property, the court said:

'But it is obvious that this rule has no application to such nuisances as may be removed the day after the verdict, or for the continuance of which a second or third action may be maintained, or which may be abated at the instance of the injured party, by the order of a competent court.' "

Plaintiffs cite Funke v. St. Louis-San Francisco Ry. Co., supra. The measure of damages was the same as in Instruction No. 5.

It must be understood that as to whether or not damages to real estate are permanent depends upon the facts in each case. In the case above cited the defendant, railway company, constructed an opening in its roadbed near plaintiff's land, which cast the waters in a body upon plaintiff's land and the court states the facts on page 980 of its opinion as shown by the evidence:

"* * * and that by reason of the new opening constructed by the defendant the water was turned on his land not only at a new and different place, but with such force and power that it cut and washed out a channel as it left the opening and ditch so constructed by defendant, and brought large quantities of white sand, referred to as building sand, and other debris and spread this white sand as much as 32 inches deep in some places rendering that part of his land entirely worthless; * * *"

There can be no question but that under these facts where the acts of the defendant have destroyed the property in question and its usefulness that the measure of damages is the difference in the market value of the land immediately before the construction and the value thereof at the time of the filing of the suit. That is not the state of facts in the case at bar.

We think an examination of all of the authorities cited will support our finding that Instruction No. 5 is erroneous as to the measure of damages. We further find that the instruction is bad because it is not predicated upon facts. It leaves the jury to speculate or guess what would constitute permanent injury.

The fourth assignment of error that the court erred in refusing Instructions A, B, C, D and E is without merit because there was not sufficient evidence to warrant the giving of these instructions.

The fifth error complained of by defendant is also without merit. The trial court admitted testimony in the form of photographs showing the surface waters in a flood of August, 1950. The witness testified that these photographs were a fair representation as to the conditions existing in the overflows of January, 1950, which constituted the damages sued for.

We agree with plaintiffs that the trial court's discretion should be upheld in this matter. Home Insurance Company v. Savage, 231 Mo. App. 569, 103 S. W. 2d 900; 22 C. J. 920; Funke v. St. Louis-San Francisco Ry. Co., supra.

The sixth error complained of, we think, has merit. We have held in this opinion that the evidence did not warrant the submission of permanent injury to plaintiffs' land.

The seventh and eighth errors complained of have been passed upon in this opinion.

Judgment reversed and cause remanded for trial in accordance with the opinion. *Vandeventer, P. J.*, and *Blair, J.*, concur.