Louis P. KEARNS and Louis V. Meehan, Plaintiffs-Appellants,

v.

CITY OF FLORISSANT, a Municipal Corporation, Defendant-Respondent.

No. 31964.

St. Louis Court of Appeals.

Missouri.

July 20, 1965.

Rehearing Denied Sept. 8, 1965.

Application for Transfer to Supreme Court Denied Oct. 11, 1965.

John T. Sluggett, III, Clayton, for plaintiffs-appellants.

John R. Gaebe, Florissant, for defendant-respondent.

BRADY, Commissioner.

This is an appeal from a judgment entered in two consolidated actions brought by the appellants to compel specific performance of what they alleged to be enforcible contracts with the City of Florissant, Mo., relating to the operation by plaintiffs of certain concession stands in the city's parks. We will refer to the respondent as "the city" and the appellants as "the plaintiffs."

In its pertinent parts Ordinance No. 722 of the city provides that the Park Board " * * * shall have control of the supervision, improvement, care and custody of said Parks, subject to the general supervisory powers of the City Council and Mayor. Subject to such supervision, the Park Board is authorized and empowered * * * to contract and grant exclusive concessions to persons for the sale of food and beverages within the parks."

In April of 1963 the Park Board circulated an invitation to bid for the operation of concession stands in two city parks and at the swimming pool for that year and extending through the 1967 season. The plaintiffs submitted bids for the operation of these stands on bid forms provided by the Park Board. The minutes of the board contain the following statement, "After further examination of the bids for the concession stands, it was decided by the board that they recommend to the Mayor, that the contracts be awarded to the following:

Louis Meehan Bangert
Louis Kearns Howdershell
Marie Darrow St. Ferdinand."

The then mayor of the city testified that upon receipt of the bid forms recommended by the board he attached a signed note to them. The note was never produced at the trial, but his testimony was that it stated

that the recommendations had been accepted . and the city clerk was instructed to notify the board and those whose bids had been accepted. The notification to the plaintiffs consisted of a telephone message to their wives from someone unidentified but whom they "assumed" to be the city clerk.

The plaintiffs made the deposits called for in the bid and entered into possession and operation of the facilities for which their bid was accepted. They also expended certain sums for the acquisition and installation of certain equipment. Each operated his respective concession until the end of that season. The next year, in preparation for the season, they tendered cashier's checks to the city as called for by the bids. Their checks were refused and the city advertised for new bids for the operation of the concessions.

The records of the city do not disclose any authorization granted to the mayor to enter into any contract or to take any action with regard to these concessions. After recommending the acceptance of plaintiffs' bids, the Park Board took no further action.

Section 432.070, RSMo 1959, V.A.M.S., forbids the city to make any contract " * * unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, * * *."

The very existence of § 432.070, supra, has been held to constitute notice to all with whom a city contracts that the law imposes restrictions upon contracts entered into by municipalities. State ex rel. Walton v. Miller, Mo.App., 297 S.W.2d 611. The requirements of that section relating to the execution of a contract by a city have been held to be mandatory, not directory. Burger v. City of Springfield, Mo., 323 S.W.2d 777.

The plaintiffs advance a twofold argument. They first contend that the ordinance permits the Park Board to enter into contracts of this nature. It is unnecessary to decide that issue for it is undisputed that the Park Board never entered into any contract. It did not even purport to accept the plaintiffs' proposal. As the board understood its function it was to recommend which of the bids should be accepted and this is the sum total of its activities. The Park Board never attempted to enter into any contract with the plaintiffs.

The second contention advanced by the plaintiffs is that the note signed by the then mayor of the city and attached to the bid forms constituted valid acceptance of the bids with the result that those documents then constituted the contracts which § 432.070, supra, requires to be in writing. We cannot reach the result plaintiffs urge upon us. The ordinance speaks of the "general supervisory powers of the City Council and Mayor" over matters of this nature. We need not dwell upon the question of delegated powers. See State ex rel. Prichard v. Ward, Mo.App., 305 S.W.2d 900, 1. c. 902 [4–7]. Assuming arguendo the ordinance allows the city council to authorize the mayor to bind the city by entering into such contracts, the fact remains that this record is devoid of any evidence of such authorization. In fact, the only evidence on the issue is that there was no such authorization. The result is that even if the missing note is to be considered as a part of the contract, we are still confronted with a contract signed by an official who, so far as this record discloses, had no authority to bind the city by such an act.

The conclusion that there is no valid writing binding the city is inescapable. In Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 1. c. 882, it is said that, " * * Under the statute it is as much ultra vires for a Missouri municipality to incur a liability in the nature of a contractural obligation in the absence of a writing as to incur a liability not within the scope of its corporate powers or one not expressly authorized by

law. * * *" At l. c. 885 (175 S.W.2d 874) the court gives the rationale for such a rule: "* * * The Missouri public policy considers the rights of the public paramount to the rights of the individual; that is, it is better to adopt, by legislation, a rule under which individuals may suffer occasionally than to permit a rule subjecting the public to injury through the possibility of carelessness or corruptness of public officials. Individual cases may present apparent hardships but it is our duty to be guided by the law the same as it was plaintiff's decedent's duty to be so guided in the first instance."

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

WOLFE, P. J., RUDDY, J., and ROY W. McGHEE, Special Judge, concur.