State of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Plaintiff-Appellant,

v.

CITY OF SULLIVAN, Missouri, and the Honorable George Hayes, Mayor of the City of Sullivan, Missouri, Individually, Defendants-Respondents.

No. 35914.

Missouri Court of Appeals,
St. Louis District,
Division 3.

Feb. 4, 1975.

Rehearing Denied March 11, 1975.

Bruce A. Ring and John H. Gladden, Jefferson City, for plaintiff-appellant.

Briegel & Kimme, Thomas J. Briegel, Union, for defendants-respondents.

GUNN, Judge.

Plaintiff, State Highway Commission, appeals from a jury verdict and judgment in favor of defendant, City of Sullivan, in a suit for recovery of costs for the alteration and relocation of a utility pipeline within the corporate limits of the City. The sole issue we consider on appeal is whether the trial court erred in excluding two documents from evidence: 1) a utility agreement executed by the Highway Commission and the City's mayor; 2) a City journal minute entry allegedly referring to the utility agreement. We find no error in the trial court's rulings and affirm the judgment.

In the construction of Interstate Highway 44 through the City of Sullivan, existing sewer utility pipelines were required to be relocated. Procedures normally followed by the Highway Commission in highway construction through a municipality provided that the municipality involved could itself arrange for the necessary relocation of municipal owned pipelines and other municipal owned utilities along the highway construction, or the municipality could participate in the overall Highway Commission construction contract with the municipality paying its share of the cost of relocating its own facilities.

On October 3, 1967, the Highway Commission wrote to Mayor George Hayes of the City of Sullivan advising him that the estimated total cost of relocating the sewer pipelines within the City would be $17,764.-12 with the City to bear 55% of the total cost, or $9,770.27 according to preliminary estimates. The Highway Commission would bear the other 45% of the relocation costs, as 45% of the sewer pipeline relocation was the Highway Commission's responsibility. On November 21, 1967 the Highway Commission again wrote Mayor Hayes and requested "a firm yes or no from the City" about the City's inclusion in the Highway Commission's roadway construction contract and the City's participation in 55% of the cost of sewer pipeline relocation. On January 23, 1968, the City's Board of Aldermen adopted Ordinance No. 1062, reading as follows:

"BILL NO. 1062

ORDINANCE NO. 1062

AN ORDINANCE AUTHORIZING AND DIRECTING THE CITY OF SULLIVAN TO ENTER INTO A CONTRACT WITH THE STATE HIGHWAY COMMISSION OF MISSOURI CONCERNING ROUTE I-44 Crawford County (Route WW to Franklin County) (Crawford Co. to Route 185 S) Projects No. I-44-3 (18) & (20)

AND PRESCRIBING THE EFFEC-TIVE DATE OF SAID ORDINANCE.

BE IT ORDAINED BY THE BOARD OF ALDERMEN OF THE CITY OF SULLIVAN AS FOLLOWS:

SECTION 1. The Mayor of the City of Sullivan and City Clerk of said City are authorized to execute a contract as pertains in the caption of this ordinance with the State of Missouri Highway Commission.

SECTION 2. This ordinance shall be in full force and effect from and after the day of its passage by the Board and approval by the Mayor.

PASSED BY THE BOARD AND APPROVED BY THE MAYOR THIS 23rd DAY OF JANUARY, 1968."

Also on January 23, 1968, Mayor Hayes executed an urban agreement pertaining to construction of the Interstate Highway 44 improvement which was also executed by the Highway Commission, with the contract specifically reciting that "the City executes same (the contract) pursuant to Ordinance No. 1062 of said City, approved on the 23rd Day of Jan., 1968." The January 23 contract contained no provisions for the payment of costs of alteration or relocation of any facilities but related primarily to the City's obligations during the highway construction to grant necessary rights of way, construction easements and provide for traffic and advertising controls in accord with State regulations. The City in accord with the letters of October 3 and November 21, 1967 then deposited the sum of $9,770.20 with the Highway Commission as its 55% share of the estimated total cost of the relocation project, the total cost estimate being $17,764.12.

In June 1969, in accordance with the lowest and best bid procedures of § 227.100 RSMo 1969, V.A.M.S., the Highway Commission entered into a roadway construction contract with Boyd Construction Company for all of the roadway construction work through the City, including the relo-

cation of the sewer pipeline facilities. The sewer pipeline work was completed on April 15, 1971, and it was then determined that the total actual cost of such work was $33,545.17, not $17,764.12 as originally estimated; that, therefore, according to the Highway Commission's calculations, 55% of the total actual cost would be $18,449.84, or $8,679.57 more than the $9,770.27 already paid by the City as its estimated share of the actual cost.

Demand was made by the Highway Commission upon the City for the payment of the additional $8,670.57, but the City refused to make payment on the grounds that it had not agreed to pay the additional sum and that it had never been notified that its costs would vary from the $9,770.-27 it had deposited; that the City, had it known that the work would have exceeded the original estimate, could have contracted to have had the sewer pipeline relocation project completed at a substantially lower cost than that charged by the Highway Commission.

The Highway Commission filed suit in five counts to recover the $8,670.57: 1) on contract; 2) under § 227.240 RSMo 1969, which provides that the costs and expenses of the relocation and removal of pipelines be recovered from the owners of such pipelines; 3) quantum meruit; 4) and 5) representations of warranty made by Mayor Hayes that he had authority to contract with the Highway Commission for the full actual costs of the pipeline relocation. One of the counts against Mayor Hayes for representation of warranty was dismissed by the trial court. The jury returned a verdict in favor of the City on all other counts.

The only point which the Highway Commission has preserved for review on appeal is concerned with the contract issue. The Highway Commission alleges that it had a firm contract with the City for the payment of 55% of the actual cost of the relocation of the pipeline. The City contends that if any such contract had been executed by any City official, such execution was

without authority, and the contract was therefore void.

At trial the Highway Commission, in an effort to demonstrate the contractual obligations of the City, attempted to introduce a so-called "utility agreement" executed by Mayor Hayes on July 11, 1968. The critical portion of the utility agreement provided:

"(5) The total cost of the work to be performed by Commission in its roadway contract for the alteration of City's sanitary sewer facilities that exist from approximately 340 feet left of centerline Station 26+13 to approximately 240 feet right of centerline Station 25+40 is now estimated to be $17,764.12. City is obligated for 55.0 percent of the total cost of the work, with City's portion now estimated to be $9,770.27. City, upon notice by Commission approximately 30 days prior to the receipt of bids for this project, will immediately deposit with Commission a check to cover City's obligation which will include 10 percent for engineering, supervision and contingencies. Upon the completion of the work, City's final obligation to Commission based upon final measurements of facilities constructed at the unit contract prices plus 10 percent for engineering, supervision and contingencies. In the event that deposit made by City is less than final cost to Commission, City shall immediately pay to Commission the difference between the actual cost and the amount deposited by City. In the event that the amount deposited by City with Commission is greater than cost of work, Commission shall immediately refund to City any excess of said deposit over the actual cost."

Further, to establish that Mayor Hayes was vested with the requisite authority to execute the utility agreement, the Highway Commission also attempted to introduce the following minute entry in the City journal for the meeting of January 18, 1968:

"The Mayor and the Board further discussed a proposal given the City by the State Highway Commission for relocating a sewer line across the new construction of I–44 Highway with the City paying 55% of the cost and the State paying 45%. They discussed this with the engineer but, after giving it thought, feel it would be better to let the State be responsible for relocating this line. Therefore, the Motion was made by Alderman Cowan that we authorize the State to put in the line per their proposal in their letter of October 3, 1967, with the estimated cost being $17,664.12. Motion seconded by Alderman Mattox. Motion carried."

The City objected to the introduction of the utility agreement and the minute entry. The basis for the City's objection to the utility agreement was that there was no authority for its execution. The objection to the minute entry was that it was too vague and indefinite to provide the necessary authority for Mayor Hayes to execute any agreement, particularly the utility agreement of July 11, 1968. The trial court sustained the City's objection and excluded the utility agreement and minute entry, and it is from these rulings that the Highway Commission takes its appeal.

█ § 432.070 RSMo 1969 specifically requires that all contracts entered into by a city be in writing and that the authority for such contracts must also be in writing. Therefore, a contract even though signed by the Mayor and attested by the Clerk is not valid unless duly authorized by the Board of Aldermen. Fulton v. City of Lockwood, 269 S.W.2d 1 (Mo.1954). And where the records of the City do not disclose authorization granted to the Mayor to enter into any contract there can be no valid writing binding the City under § 432.070. Kearns v. City of Florissant, 393 S.W.2d 841 (Mo.App.1965). In order to bind the City of Sullivan to the utility agreement executed by Mayor Hayes on July 11, 1968, the record entry in the City

journal of the minutes of January 18, 1968 purportedly authorizing the contract must not be vague and uncertain but must sufficiently identify the subject matter under consideration with reasonable exactitude and specificity. State ex rel. Prichard v. Ward, 305 S.W.2d 900 (Mo.App.1957).

The Highway Commission argues that the minute entry and utility agreement should have been received in evidence. It is the trial court's function to determine the admissibility of evidence as that is a matter of law. And the trial court's ruling with regard to the acceptance or rejection of evidence will not be disturbed on appeal unless there is an apparent abuse of discretion. Nielson v. Dierking, 418 S.W.2d 146 (Mo.1967); Blackburn v. Gaydau, 241 Mo.App. 917, 245 S.W.2d 161 (1951). We do not disagree with the trial court's action in excluding the minute entry, for the minute is vague as to authorization of the utility agreement of July 11, 1968. We conclude that the trial court did not abuse its discretion in refusing to receive the minute entry into evidence.

In addition to arguing that the minute entry of January 18, 1968 is authority for the utility agreement, the Highway Commission stresses that Ordinance No. 1062 affords authority for that agreement. We cannot as a matter of law read into or find that Ordinance No. 1062 provides that requisite authority for Mayor Hayes to sign the rejected utility agreement. Ordinance No. 1062, at best, relates only to so called "Urban Agreement" of January 23, 1968, which contains absolutely no terms regarding costs. Thus, there was no authority for the utility agreement, and it would not be binding and enforceable against the City. State ex rel. State Highway Commission v. County of Camden, 394 S.W.2d 71 (Mo.App.1965); Kearns v. City of Florissant, supra. The utility agreement was properly excluded from evidence.

The Highway Commission contends that the City did not make an objection to the minutes of January 18 as being vague and indefinite. Our reading of the record leads us to a different conclusion, as we find that an objection was made to the receipt of the minutes as being vague and indefinite. In any event, it matters not in this case what grounds the City recited for its objection to the receipt of the minute entry, as in our review the question is whether the trial court's ruling on an objection is correct and not whether it is correct on the particular grounds raised. Eller v. Crowell, 238 S.W.2d 310 (Mo. 1951). The trial court's ruling in rejecting the evidence was proper.

Remaining points raised by the Highway Commission are obscure, abstract, unpersuasive and fail to comply with Rule 84.04, V.A.M.R. They do not warrant discussion or consideration here. See Kerr v. Ehinger, Inc., 515 S.W.2d 763 (Mo.App.1974); Butterbaugh v. Public Water Supply Dist. No. 12, 512 S.W.2d 445 (Mo.App.1974)

The judgment is affirmed.

SIMEONE, P. J., concurs.

McMILLIAN, J., dissents.

McMILLIAN, Judge (dissenting).

I respectfully dissent.

The minute entry in the City Journal, dated January 18, 1968, clearly was the basis for the adoption of Ordinance No. 1062, dated 23 January 1968. Armed with City of Sullivan Ordinance No. 1062, the Mayor of the City of Sullivan was authorized to execute a contract with the State Highway Department. Pursuant to the authorization of the Ordinance, on July 11, 1968, Mayor Hayes executed the utility agreement set forth in the majority opinion.

Under the agreement the original cost set forth was an estimate; however, to in-

sure that if the cost either exceeded the estimate or was lower than the estimate the utility agreement contained a provision to cover either contingency. When the Ordinance and the minute entry are integrated and read together, in my opinion, it is abundantly clear that the Mayor had the authority to execute the utility agreement. Any lack of specificity by the utility agreement is made abundantly clear by both the minute entry in the city journal and Ordinance No. 1062 and especially so by the urban agreement.

To permit the City of Sullivan to benefit from the alterations and relocation of the utility pipeline as contained in the utility agreement is to unduly and unjustly enrich it at the expense of the State Highway Commission contrary to the City of Sullivan's obligation under the contract. I would reverse and enter judgment in favor of appellant.