John C. LANGLOIS, Plaintiff–
Respondent,

v.

PEMISCOT MEMORIAL HOSPITAL,
d/b/a Pemiscot Memorial Health
Systems, Defendant–Appellant.

No. 26851.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 24, 2006.

Motion for Rehearing or Transfer
Denied Feb. 15, 2006.

Application for Transfer Denied
April 11, 2006.

W. Edward Reeves, Ward & Reeves, Caruthersville, for Appellant.

Joseph C. Blanton, Jr., Amanda D. Cochran, Blanton, Rice, Sidwell, Nickell, Cozean & Collins, L.L.C., Sikeston, for Respondent.

PHILLIP R. GARRISON, Judge.

This appeal stems from a claim for breach of an employment contract between John C. Langlois ("Plaintiff"), and Pemiscot Memorial Hospital, d/b/a Pemiscot Memorial Health Systems ("Defendant"), a county hospital, organized and operating under Sections 205.160 *et seq.*[1] The trial court entered a judgment in favor of Plaintiff in the amount of $21,553.56. Defendant appeals, asserting that it did not authorize the contract pursuant to Section 432.070. We agree and reverse the judgment.

Plaintiff, who is a certified public accountant with extensive experience in the health care industry, was hired as Defendant's Chief Financial Officer ("CFO") to help improve its poor financial performance. Prior to being hired he met with Darrell Jean, Defendant's Chief Executive Officer ("Jean"), and on September 10, 1999, Plaintiff submitted in writing, to Jean, a combination of proposed salary requirements and possible incentive bonuses. After several meetings with Jean and other members of Defendant's Board of Trustees ("the Board"), Plaintiff, on February 8, 2000, sent a revised salary requirement and bonus package to Jean.

Plaintiff alleged that Jean presented the various options for compensation suggested by Plaintiff to the Board, which met in executive session on February 17, 2000. In its minutes, the Board discussed the search for a CFO, and they noted that Jean announced to the Board that the search "was going well," and that he had received two resumes. The minutes reflected that it was the consensus of the Board to contact Plaintiff to verify the proposal and "if agreeable then proceed with hiring him as soon as possible."

The employment contract was executed on Defendant's behalf by Jean, and on February 23, 2000, was forwarded to Plaintiff, along with a cover letter announcing that the Board and Jean had "unanimously voted to employ [him] as [CFO]." The letter stated that Jean believed that the contract contained all of the provisions Plaintiff addressed in his February 8, 2000, letter. Plaintiff signed the contract on February 29, 2000, and pursuant to that contract, began employment with Defendant.

During Plaintiff's tenure as CFO, Defendant's finances improved dramatically. In fiscal year 2000 Defendant had a net loss of $2,824,823; in fiscal year 2001 Defendant lost only $736,150, and in fiscal year 2002 Defendant posted a net profit of $1,225,138. Plaintiff received two bonus checks totaling $18,000. These checks were issued for the fiscal year ending in 2001, based upon the improvements made in Defendant's financial position.

In late 2002, Plaintiff, citing differences with the Board, resigned his position as CFO. Because the financial conditions of the hospital continued to improve during 2002, Jean authorized the issuance of an-

---

**1.** All references to statutes are to RSMo (2000) unless otherwise indicated.

other bonus check to Plaintiff in the amount of $18,900. However, when Plaintiff attempted to deposit this check on April 17, 2003, he was notified by his bank that a "stop payment" order had been put on the check. In response to Plaintiff's inquiry as to why the check was not honored, Defendant asserted that by canceling the 2002 bonus check it was off-setting the two bonus checks Plaintiff received for fiscal year 2001, which Defendant claimed had been issued contrary to the parties' contract.[2]

In an attempt to collect the 2002 bonus from Defendant, Plaintiff filed his first amended petition on August 30, 2004, for, *inter alia*, breach of contract. Both parties waived trial by jury and the case was heard by the trial court on October 22, 2004. The trial court entered its findings of fact and conclusions of law in favor of Plaintiff and against Defendant on the breach of contract claim in the amount of $21,553.56. Defendant appeals this judgment.

■ In its sole point on this appeal, Defendant asserts, *inter alia*, that it did not authorize Jean to contract with Plaintiff in accordance with Section 432.070, which sets out the requirements for state and local governmental bodies to be bound by contractual obligations, and therefore was not obligated to pay him any bonus.[3] We agree and reverse.

Section 432.070 provides:

No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.

We are to construe this statute strictly. *United Coop., Inc. v. City of Smithville*, 630 S.W.2d 255, 256 (Mo.App. W.D.1982). Strict construction of Section 432.070 "safeguard[s] the public from needless and extravagant demands" and serves to "restrain public officials from ill-considered action and prevent[s] ... fraud and speculation." *Id.*

■ The minutes which are said to authorize Plaintiff's contract "must not be vague and uncertain but must sufficiently identify the subject matter under consideration with reasonable exactitude and specificity." *State Highway Comm'n v. City of Sullivan*, 520 S.W.2d 186, 190 (Mo.App.St. L.1975); *see also State ex rel. Prichard v. Ward*, 305 S.W.2d 900, 902 (Mo.App.K.C. 1957). This should include identification of the subject matter, an outline of the terms

---

2. The amount and method of calculation of these bonuses was a significant issue at trial and is extensively argued on this appeal. However, for reasons discussed in this opinion, we do not address whether the bonus provision in contract was properly interpreted and applied by Defendant. The pertinent provision provides:

[Plaintiff] will also be eligible for incentive pay based upon the net income from hospital operations as shown in the year end formal audit. The incentive will be calculated at seven percent (7%) of net operations based upon the average net operations of the preceding two (2) fiscal years and payable two weeks after final audit. This incentive provision will be capped at twenty percent (20%) of base pay in one year.

3. There is no contention made that Defendant is not a governmental body subject to Section 432.070.

and the consideration to be paid under the contract. *Ward,* 305 S.W.2d at 902.

In *City of Sullivan,* the court upheld the trial court's finding that the minute entry from the City's Board of Alderman meeting, which purported to authorize the Mayor to enter into a contract with the State Highway Commission, was vague and therefore not in compliance with Section 432.070. That minute entry stated:

> The Mayor and the Board further discussed a proposal given the City by the State Highway Commission for relocating a sewer line across the new construction of I—44 Highway with the City paying 55% of the cost and the State paying 45%. They discussed this with the engineer but, after giving it thought, feel it would be better to let the State be responsible for relocating this line. Therefore, the Motion was made by Alderman Cowan that we authorize the State to put in the line per their proposal in their letter of October 3, 1967, with the estimated cost being $17,664.12. Motion seconded by Alderman Mattox. Motion carried.

520 S.W.2d at 189. Likewise, in *Ward* the court found the following minute entry to be vague and therefore did not meet the requirements of the statute:

> Motion by Jackson the Mayor be authorized and instructed to enter into a contract with G.W. Prichard concerning Electric Distribution System, said contract to be subject to the approval of a legal practicing attorney and in conformity with the Manual of Practice of Civil Engineering, Seconded by Armstrong, Vote: * * *.

305 S.W.2d at 901. In both *City of Sullivan* and *Ward,* the governmental body instructed the Mayor to enter into a contract, however, in neither case was the subject matter of the contract clear. In *City of Sullivan,* the Board never de-scribed the "proposal," and in *Ward,* the minutes only vaguely reference "a contract," without detailing any of the terms or consideration to be paid. While the contract itself may not have to be reproduced in the record purporting to authorize it, the minutes, or other record of the proceedings, "must sufficiently identify the subject matter under consideration with reasonable exactitude and specificity." *City of Sullivan,* 520 S.W.2d at 190. As noted above, this should include an outline of the terms and a description of the consideration to be paid under the contract. *Ward,* 305 S.W.2d at 902.

In this case the only minute entry admitted at trial was the following:

> Mr. Jean indicated that the search for C.F.O. was going well. We have received resumes on David Lynn and [Plaintiff]. It was the consensus of the Board to contact [Plaintiff] to verify proposal and if agreeable then proceed with hiring him as soon as possible.

Here, it is the phrase "to verify proposal and if agreeable" that fails to adequately describe the contract. Which party's proposal does this refer to? What are the terms? Specifically, what is the consideration to be paid under the proposal? What did the Board mean by "if agreeable"? Agreeable to Plaintiff, or agreeable to Defendant? This minute entry does not contain any terms, nor any description of the consideration to be paid under the contract. Therefore, based upon the minutes, the Board can not be said to have authorized Jean to enter into this contract with Plaintiff, as required by Section 432.070.

Plaintiff argues, and the trial court agreed, that the term "proposal" in the minutes, referenced correspondence between Jean and Plaintiff which did contain the essential terms of the contract and

thus by using the word "proposal," the Board in essence was referring to the contract as it existed in the correspondence between Jean and Plaintiff. Plaintiff relies on *Burger v. City of Springfield*, which he construes to hold that a series of letters containing contractual terms between the City and Burger, in conjunction with a city council resolution was sufficient to bring the contract within the requirements of Section 432.070. 323 S.W.2d 777, 781 (Mo. 1959). However, that case only pertained to whether the essential terms of the contract were memorialized in writing as also required by Section 432.070. Contrary to the instant case, there the court specifically noted that there was no issue as to whether an agent of City was authorized to enter into the contract. *Id.* at 781.

■ Nevertheless, when statutorily mandated to maintain records of their proceedings, public bodies can only speak through their minutes and records. *Fulton v. City of Lockwood*, 269 S.W.2d 1, 5 (Mo.1954). The Board is directed by Section 205.190.7 to "hold meetings at least once a month ... [and] keep a complete record of all its proceedings." Therefore, the letters between Jean and Plaintiff containing alleged proposals cannot be used as parol or secondary evidence to interpret the word "proposal" as it appears in the minutes. *Fulton*, 269 S.W.2d at 6; *see also State ex rel. Nixon v. Corley*, 896 S.W.2d 931, 932 (Mo. banc 1995). Such evidence is appropriate only in an action by a party to amend the minutes or other record in order to prove the authorization of a contract. *Fulton*, 269 S.W.2d at 6.

Based upon the record before us we can not say that the minutes of February 17, 2000, illustrate sufficient authorization by the Board of the contract to satisfy Section 432.070. As a result we are constrained to, and do, reverse the trial court's judgment.

BATES, C.J., and BARNEY, J., concur.