Robert MOYNIHAN, Appellant,

v.

CITY OF MANCHESTER,
et al., Respondents.

No. ED 90886.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 30, 2008.

Patrick C. Dowd, Saint Louis, MO, for appellant.

Patrick R. Gunn, Gino F. Battisti, Saint Louis, MO, for respondents.

*OPINION*

GLENN A. NORTON, Judge.

In this taxpayer action, Robert Moynihan appeals from the grant of summary judgment in favor of the City of Manchester (the "City") on Moynihan's petition for declaratory judgment and injunction.[1] We reverse and remand.

## I. BACKGROUND

In September 2000, Matthews was appointed by the City's Board of Alderman (the "Board") as the City Administrator. On December 1, 2003, the Board, upon proper motion, second, and majority vote, went into a closed session pursuant to section 610.021(3) RSMo 2000[2] to discuss Matthews's employment.[3] The record contains a memorandum to the "City of Manchester File," drafted by the City Attorney, documenting the events of the December 1 closed session.[4] According to the memorandum, during the course of the December 1 closed session, a Board member moved to "seek [Matthews's] resignation immediately and, if we're not successful, her employment be terminated...."

The City claims that the motion passed by a vote of 4–2 and that it was agreed that the City Mayor and the City Attorney "would meet with [Matthews] this afternoon to inform her of the Board's desire."

After his initial meeting with Matthews, the City Attorney learned that she had retained an attorney to pursue a claim for gender bias in connection with her termination. Matthews's attorney proposed a settlement whereby Matthews would receive additional months of severance pay and other benefits in exchange for her release of all claims against the City.[5]

Thereafter, on December 4, 2003, the Board convened as part of an official work session. No Board meeting, open or closed, was called to order. The only evidence in the record pertaining to the events of December 4 are the affidavits of five Board members filed by the City in conjunction with its motion for summary judgment, and an affidavit of a sixth Board member filed by Moynihan in response to the City's motion for summary judgment. The affidavits filed by the City claim that during the December 4 work session, the

---

1. In addition to granting summary judgment in favor of the City, the trial court dismissed Moynihan's claims for declaratory judgment and injunction asserted against the City's former employee, Barbara Burns Matthews.

2. All statutory references are to RSMo 2000.

3. Pursuant to section 610.021(3), the Board may go into a closed meeting to discuss:

   [h]iring, firing, disciplining or promoting of particular employees by a public governmental body when personal information about the employee is discussed or recorded.... [A]ny vote on a final decision ... to hire, fire, promote or discipline an employee of a public governmental body shall be made available with a record of how each member voted to the public within seventy-two hours of the close of the meeting....

   The Board must follow certain procedures to close a meeting. Section 610.022. The

Board, at an open meeting, must give notice of the time, date and place of the closed meeting, and must state the reason for holding a closed meeting by reference to the specific exception allowed in section 610.021. *Id.* "[N]o meeting or vote may be closed without an affirmative public vote of the majority of a quorum of the public governmental body." *Id.*

4. Because this meeting was closed, no minutes of the meeting or the vote were recorded. *See* Section 610.021 (authorizing, except where otherwise required by law, a governmental body to close meetings, records and votes to the extent they relate to, among other things, the firing of a particular employee).

5. The ordinance appointing Matthews as City Administrator provided that, upon her termination, Matthews would be entitled to three months severance pay.

City Attorney met with each Board member individually to advise them of the potential claims against the City and the proposed settlement. Each of the five Board members filing affidavits for the City stated that during their meeting with the City Attorney, he or she indicated his or her approval of the proposed settlement.[6] No official vote was taken or recorded, and no minutes were taken or recorded. Nevertheless, the Mayor, on behalf of the City, proceeded to execute a Separation and Release Agreement (the "Separation Agreement") with Matthews. Under the Separation Agreement, Matthews received eight months severance pay and other additional benefits.

Moynihan filed an action for declaratory judgment and injunction against Matthews and the City seeking to have the Separation Agreement declared void and to recover payments by the City to Matthews made pursuant to the Separation Agreement. Moynihan alleges that the Separation Agreement was void *ab initio* because it violates section 432.070[7] in that there was no written authorization by the Board to execute the Separation Agreement.

The City filed a motion for summary judgment asserting that it was entitled to judgment as a matter of law because Moynihan was unable to prove that the Separation Agreement was illegal, and therefore void because the City failed to comply with the requirements of section 432.070. The circuit court entered summary judgment in favor of the City and dismissed all claims asserted by Moynihan against Matthews. Moynihan appeals.

6. The Board member who filed an affidavit on behalf of Moynihan stated that he told the City Attorney that he was opposed to a settlement and that he wanted to discuss the matter as a Board.

7. Section 432.070 requires that all contracts entered into by a city be in writing and that the authority for such contracts be in writing.

## II. DISCUSSION

### A. Standard of Review

We review the grant of summary judgment *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered. *Id.* We will affirm a grant of summary judgment where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.* Where the movant is a "defending party," it may establish a right to summary judgment by showing, *inter alia*, undisputed facts that negate any one of the claimant's required proof elements. *Id.* at 381; Rule 74.04(c).[8] When, and only when, the movant has made the prima facie showing required by Rule 74.04(c), the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue for trial. *Id.*

### B. The City has Failed to Make the Prima Facie Showing Required by Rule 74.04(c)

On appeal, Moynihan raises six points of error, each claiming that the court erred in its ultimate determination that the City was entitled to judgment as a matter of law. Because we find that the City has failed to make the prima facie showing required to establish that it is entitled to summary judgment, we find it unnecessary to address each of Moynihan's points individually.

*State Highway Commission v. City of Sullivan,* 520 S.W.2d 186, 189 (Mo.App.1975). The specific language of the statute is set out below in Section II.B.1.

8. All references to Rule are to Missouri Supreme Court Rules (2008).

The City asserts that it is entitled to summary judgment, as a matter of law, because Moynihan is unable to prove that the Separation Agreement was illegal for failing to comply with section 432.070.[9] In determining whether the City has established a right to summary judgment, the sole question before us is whether the City has shown undisputed facts that negate Moynihan's claim that the Separation Agreement violates section 432.070 and is therefore void.

### 1. The Requirements of Section 432.070

Section 432.070 provides:

No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and *such contract,* including the consideration, *shall be in writing* and dated when made, *and shall be* subscribed by the parties thereto, or their agents authorized by law and duly appointed and *authorized in writing.*

(emphasis added). Thus, 432.070 "specifically requires that all contracts entered into by a city be in writing and that the authority for such contracts must also be in writing." *State Highway Commission,* 520 S.W.2d at 189. Accordingly, a contract, even though in writing and signed by a city's mayor, "is not valid unless duly authorized by the Board of Alderman." *Id.* The requirements of section 432.070 are mandatory, not discretionary, and a contract made in violation of section 432.070 is void, rather than voidable, *ORF Construction, Inc. v. Black Jack Fire Protection District,* 239 S.W.3d 685, 687 (Mo. App. E.D.2007).

In some circumstances, substantial compliance with the statute may be sufficient to create a valid contract. *Public Water Supply District No. 16 v. City of Buckner,* 44 S.W.3d 860, 864 (Mo.App. W.D.2001). Nevertheless, the records of a municipality must disclose authorization for the execution of a contract, and such authorizing record "must not be vague and uncertain but must sufficiently identify the subject matter under consideration with reasonable exactitude and specificity." *Shadowood Development Company, Ltd. v. City of Lake St. Louis,* 668 S.W.2d 647, 648 (Mo.App. E.D.1984) (internal quotations omitted).

### 2. The City Failed to Establish Compliance, Literal or Substantial, with the Written Authorization Requirement of Section 432.070

In order to show that it is entitled to summary judgment on Moynihan's sec-

---

**9.** In its motion, the City asserted an additional ground for granting summary judgment in its favor. The City argued that section 610.021 (providing for closed meetings and closed votes of legal actions and personnel matters) defeats Moynihan's "claim" that the Board failed to comply with section 79.150 (requiring the Board to keep a journal of its proceedings). We disagree with the City's characterization of Moynihan's petition in that we do not read it to assert a claim for violation of section 79.150. Moynihan does assert in paragraph 14(c) of his first amended petition that the Board failed to make a journal entry approving any contract with Matthews as required by section 79.150. However, we believe this to be a fact asserted in support of Moynihan's claim under section 432.070 that there is no written authorization, recorded or otherwise, for the Separation Agreement. Because we do not read Moynihan's petition to assert a claim for violation of section 79.150, we decline to address the City's second ground upon which it based its motion for summary judgment.

tion 432.070 claim, the City must first make a prima facie showing of facts which establish that the Mayor, as an agent for the City, was duly authorized to execute the Separation Agreement. The City argues that the evidence produced in support of its motion for summary judgment shows that the Board "substantially complied" with the statutory requirements of section 432.070, and therefore the Separation Agreement cannot, as a matter of law, be declared illegal or void.[10] Specifically, the City maintains that the evidence of the December 1 Board vote, the affidavits of five Board members, and the Separation Agreement itself, taken together, supports a finding that the City substantially complied with section 432.070. For the reasons stated below, we find that each evidentiary basis upon which the City urges a finding of substantial compliance is flawed. Because we find that each evidentiary basis is deficient, we further find that the City's evidence, taken together, fails to show substantial compliance with the written authorization requirement of section 432.070.

a. **The Authority Granted by the Board at the December 1 Meeting was too Vague and Uncertain to Satisfy the Written Authorization Requirement of Section 432.070**

■ The City relies on the Board vote, taken during the closed session on December 1, 2003, as evidence that the execution of the Separation Agreement was authorized. The Board, by a vote of 4–2, passed a motion to "seek [Matthews's] resignation immediately and, if we're not successful, her employment be terminated." The City argues that by voting in favor of this mo-

tion, the Board authorized the Mayor and the City Attorney to "accomplish Matthews's immediate resignation." The City claims that "[t]he execution of the [Separation] Agreement simply carried out the Board's mandate passed during the closed session on December 1, 2003."

We find that the City's evidence of the December 1, 2003 vote does not show that the Mayor, as an agent of the City, was "authorized in writing" to execute the Separation Agreement as mandated by section 432.070. The authority granted by the Board at the December 1 meeting was too vague and uncertain to satisfy the authorization requirement of section 432.070. *See Langlois v. Pemiscot Memorial Hospital,* 185 S.W.3d 711, 713–14 (Mo.App. S.D. 2006). The requisite written authorization must be specific and definite, and must include an outline of the terms of the proposed contract. *Id.* The authority granted pursuant to the December 1 vote was broad in scope and did not specifically authorize certain terms. While the vote allowed the Mayor and the City Attorney to approach Matthews and seek her resignation, it did not specify, let alone authorize, the execution of a termination agreement that would entitle Matthews to five months additional severance pay. In fact, nowhere in the evidence of the December 1 vote submitted by the City does it mention that the Board discussed, or even anticipated, the potential need to enter into the Separation Agreement with Matthews. Moreover, the Board could not delegate the authority to enter into a contract with Matthews where the terms of the contract were not yet determined and were to be at the discretion of the Mayor

---

**10.** We note that Moynihan argues that the City's "parol evidence" filed in conjunction with its motion for summary judgment is inadmissible to prove that the City complied with the written authorization requirement contained 432.070. We find it unnecessary to rule on the admissibility of the City's evidence because, as discussed below, it nevertheless fails to establish the requisite written authorization.

and the City Attorney. *See State ex rel. Prichard v. Ward,* 305 S.W.2d 900, 901–02 (Mo.App.1957). Thus, it cannot be said that the December 1 Board vote authorized the Mayor to execute the Separation Agreement.

**b. The Affidavits Filed with the City's Motion for Summary Judgment do not Show the Necessary Board Action Required to Authorize the Execution of the Separation Agreement**

The City further relies on the affidavits of five individual Board members to attempt to show that the execution of the Separation Agreement was authorized as required by section 432.070. The affidavits filed by the City claim that during a work session held on December 4, the City Attorney met with each Board member individually to advise them of Matthews's potential claims against the City and of the proposed settlement. Each of the five Board members filing affidavits for the City stated that during their meeting with the City Attorney, he or she assented to the execution of the Settlement Agreement.

■ We find that the affidavits submitted by the City fail to show Board action and therefore may not serve as evidence of substantial compliance with the written authorization requirement of section 432.070. The affidavits show that there was no Board meeting on December 4, but rather a series of individual meetings between the City Attorney and each Board member. This does not constitute Board action. The individual acts of a board's members, or the unofficial act of all its members, are of no force. *See State ex rel Dussault v. Board of Adjustment, City of Maryland Heights,* 901 S.W.2d 318, 320 (Mo.App. E.D.1995) (stating that a governing body of a municipality can act only as a body and the individual action of any member or unofficial act or agreement of all or part of

the members are ineffectual and without binding force). The Board can only act as a body at a duly authorized or official meeting. *See id.* Thus, even if five of the six Board members indicated to the City Attorney their approval of the proposed settlement, there was no Board action authorizing the terms of the Settlement Agreement, or its execution. *See id.*

**c. The Separation Agreement does not Confirm any Alleged Action of the Board Authorizing the Execution of the Separation Agreement**

■ Finally, the City attempts to argue that the Separation Agreement itself may serve as evidence that the written authorization requirement was satisfied. The City argues that "[t]he Agreement itself confirms in writing the actions of the Board" by stating that it was "signed with the full authority of the [Board]." This argument is without merit. First, the Separation Agreement cannot, *ex post facto,* provide the authorization for its execution. Second, the City only asserts two events that constituted Board action—the December 1 vote and the December 4 individual meetings. We have already found that the evidence of the December 1 vote was too vague and uncertain, and the evidence of the December 4 "meetings" affirmatively shows an absence of Board action. Thus, the Separation Agreement does not confirm any alleged action of the Board presented by the City in its motion for summary judgment which authorized its execution.

**d. Conclusion**

The evidence upon which the City relies does not to establish that the City complied with the written authorization requirement of section 432.070 in executing the Separation Agreement. The authorization granted by the Board upon a 4–2 vote at the closed meeting on December 1,

2003 was too vague and uncertain to serve as written authorization for the Separation Agreement as required by section 432.070. In addition, the evidence of the December 4 meetings between the City Attorney and individual Board members not only fails to show Board action, but also fails to point to any written authorization for the execution of the Separation Agreement. Finally, the Separation Agreement does not confirm any alleged Board action authorizing its execution. Because each evidentiary basis upon which the City urges a finding of substantial compliance is deficient, we find that the City's evidence, taken together, does not establish that the written authorization requirement of section 432.070 was satisfied. Thus, the City has not established a right to summary judgment by making a prima facie showing of undisputed facts that negate Moynihan's claim that the Separation Agreement was illegal and therefore void *ab initio* because it was executed in violation of section 432.070. Accordingly, the trial court erred in granting summary judgment in favor of the City.

## III. CONCLUSION

We reverse the trial court's grant of summary judgment in favor of the City and dismissal of Moynihan's claims, and we remand for further proceedings not inconsistent with this opinion.

KURT S. ODENWALD, P.J. and PATRICIA L. COHEN, J., concur.