**CITY OF DARDENNE PRAIRIE, Missouri, Appellant,**

v.

**ADAMS CONCRETE AND MASONRY, LLC, et al., Respondents.**

**No. ED 104982**

Missouri Court of Appeals, Eastern District, DIVISION FOUR.

FILED: May 30, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied July 13, 2017

Motion for Transfer to Supreme Court Denied October 5, 2017

David T. Hamilton, 200 N. Third Street, St. Charles, MO 63301, for appellant.

Adams Concrete & Masonry, Pro Se, 113 Birkhead Road, Winfield, MO 63389, for respondent.

KURT S. ODENWALD, Judge

Introduction

The City of Dardenne Prairie ("City") appeals from the trial court's grant of judgment on the pleadings, which rejected the City's breach-of-contract claim against Adams Concrete and Masonry ("Adams

Concrete") and also dismissed Adams Concrete's breach-of-contract counterclaim against the City. Both the claim and counterclaim were premised upon the writing attached to the City's petition as Exhibit 1. Because the City was bound by its assertion, in its own pleadings, that the terms of Exhibit 1 were never approved by the City's Board of Aldermen ("Board"), the purported contract is void ab initio for failing to comply with Section 432.070.[1] Accordingly, the trial court properly granted judgment on the pleadings. We affirm.

## Factual and Procedural History

Under our standard of review, we accept the facts as alleged in the City's petition: The underlying litigation arises from the City's purchase of "custom masonry material" ("bricks"). The City planned to use these bricks to construct a new city hall and a proposed parks maintenance building ("Parks Building").

In October 2008, the City enacted two ordinances regarding the construction of a new city hall. Ordinance No. 1350 authorized the City to enter into an "architectural services agreement" with Studio One Architecture, Inc. ("Studio One") "in relation to the design and construction of the new City Hall." Ordinance No. 1351 authorized the City to enter into a separate agreement with Studio One for "construction management services" relating to the design and construction of the new city hall.

After the City and Studio One entered into the construction-management agreement, Studio One advised the City to purchase the bricks needed to construct the new city hall and the proposed Parks Building. Although the Parks Building was not yet approved by the Board, Studio One advised the City to purchase the bricks for that project to hedge against the rising cost of bricks.

Following this advice, the City ordered bricks to cover both projects from Adams Concrete. The City's petition stated:

> The City, through Studio One, entered into an agreement with Adams Concrete and ordered the Bricks for the new City Hall and Parks Building (the "Contract"). A true and correct copy of the Contract and Invoice for the Bricks is attached as **Exhibit 1** and incorporated as though fully set forth. [Emphasis in original.]

The first page of Exhibit 1 describes itself as a "proposal by and between Studio One Architecture/Dardenne Prairie City (Contractor) and Adams Concrete and Masonry; (Sub Contractor)." The terms specified that Adams Concrete was to provide "masonry work," and the scope of this work was to provide "[a]ll qualified labor, material, equipment and supervision."[2] The contract price was $86,824.47, and the document was signed (the signatory's identity is unclear from the pleadings). The second page of Exhibit 1 was an invoice addressed to Studio One, which indicated a billed amount of $22,022.13 for the bricks ordered for the Parks Building.[3]

1. All statutory references are to RSMo (Cum. Supp. 2012).

2. The contract also listed a few things that Studio One and the City needed to provide.

3. Both pages one and two of Exhibit 1 use the term "Annex Building" but do not otherwise describe whether the Annex Building is the new city hall, the Parks Building, or both. The City's claim for $22,022.13, premised on Exhibit 1, relates only to the order of bricks not delivered for the Parks Building. Accordingly, we are left to conclude from the City's petition that the Annex Building that is the subject of Exhibit 1 is the Parks Building referred in the City's petition.

In November 2009, the City paid Adams Concrete in full for both orders of bricks. Adams Concrete then arranged for the fabrication of the bricks from Raineri Building Materials, Inc. ("Raineri"). Rained delivered to the City the order of bricks that were to be used for the new city hall. In December 2010, the City decided not to construct the Parks Building. Raineri never delivered to the City the remaining order of bricks allocated for the Parks Building.

Several years passed without any communication regarding the allotment of bricks for the Parks Building. As part of a general audit in November 2014, the City contacted Adams Concrete regarding the status and location of the bricks that had been ordered for the never-completed Parks Building. Upon learning that Raineri had either donated or re-sold those bricks to a third party, the City sued Studio One, Adams Concrete, and Raineri in a six-count petition, Only Count VI asserted a claim against Adams Concrete, which is the subject of this appeal.

The City alleges in Count VI a breach-of-contract claim against Adams Concrete. The City avers that, through Studio One, it entered into "the Contract" (previously defined by the City as Exhibit 1, see above) with Adams Concrete for the purchase of bricks. The City claims that Adams Concrete breached the contract by failing to deliver a portion of the bricks or by taking inadequate steps to ensure that the bricks were stored properly after fabrication. The City prayed for $22,022.13 in damages, which represented the cost of the undelivered bricks.

Adams Concrete filed an answer denying the City's allegations and asserted a counterclaim against the City for breach of contract. The counterclaim also relied on the writing attached as Exhibit 1 to the City's petition, and alleged that the City contracted with Adams Concrete to provide masonry work for the new city hall and the Parks Building. Adams Concrete averred that the City breached its agreement when it cancelled the construction of the Parks Building.

The City filed a reply pleading to the counterclaim in which it raised certain affirmative defenses to Adams Concrete's claims. As one of its affirmative defenses, the City asserted that Exhibit 1 was not an enforceable agreement because it had not been approved by the City's Board as required by law:

> The terms of Exhibit 1, to the extent they purport to be a contract, are not enforceable as to the City pursuant to the terms of § 432.070, RSMo., for the reason that the Board of Aldermen of the City did not approve said agreement by ordinance duly adopted by the Board of Aldermen and the agreement is therefore void ab initio.

Seizing on the City's affirmative defense, Adams Concrete moved for judgment on the pleadings. In its motion, Adams Concrete argued that the City, in its affirmative defense, admitted that the Board did not approve Exhibit 1 and that, to the extent the writing attached as Exhibit 1 purported to be a contract, it was void under Section 432.070. The motion concluded that the City, therefore, was barred from recovering on its breach-of-contract claim against Adams Concrete because the City's claim was also based on its allegation that Exhibit 1 served as the contract between the parties.

In May 2016, the trial court sustained Adams Concrete's motion for judgment on the pleadings, without issuing findings of fact or conclusions of law. With respect to the City's Count VI against Adams Concrete, the trial court granted judgment for Adams Concrete and against the City. The trial court also dismissed with prejudice

Adams Concrete's counterclaim based on Exhibit 1.

Litigation continued on the remaining claims between the other parties. By October 2016, the parties resolved all remaining claims. The City now appeals the trial court's judgment on the City's Count VI against Adams Concrete.

## Points on Appeal

The City raises two points on appeal, both of which maintain that the trial court erred in granting Adams Concrete's motion for judgment on the pleadings. Point One argues that the City's petition pleaded allegations sufficient to meet the elements of a valid municipal contract under Section 432.070. Point Two claims that the trial court improperly relied on factual allegations not alleged in the City's petition when granting judgment on the pleadings in favor of Adams's Concrete.

## Standard of Review

■ Judgment on the pleadings addresses a question of law, which we review de novo. Buehrle v. Mo. Dep't of Corr., 344 S.W.3d 269, 271 (Mo. App. E.D. 2011). For the purposes of the motion, the moving party admits the truth of all well-pleaded facts in the opposing party's pleadings. Angelo v. City of Hazelwood, 810 S.W.2d 706, 707 (Mo. App. E.D. 1991). Thus, the position of the party seeking judgment on the pleadings is similar to that of a movant in a motion to dismiss: assuming the facts pleaded by the opposite party to be true, these facts nevertheless are insufficient to warrant relief as a matter of law. Id. We therefore affirm a judgment on the pleadings "only where under the conceded facts, a judgment different from that pronounced could not be rendered notwithstanding any evidence which might be produced." Armstrong v. Cape Girardeau Physician As-

socs., 49 S.W.3d 821, 824 (Mo. App. E.D. 2001) (citations omitted).

## Discussion

Both of the City's points on appeal contend that the trial court erred in rendering judgment on the pleadings. We will address both points together because the arguments of each are intertwined. Ultimately, the issue before us is whether Adams Concrete was entitled to judgment as a matter of law on Count VI based on the allegations asserted by the City in its pleadings. See In re Marriage of Busch, 310 S.W.3d 253, 259 (Mo. App. E.D. 2010).

**I. The City was bound by its assertion that the Board of Alderman did not approve Exhibit 1 by ordinance.**

■ In its petition, the City alleged that it "entered into an agreement with Adams Concrete and ordered the Bricks for the new City Hall and Parks Building (the 'Contract')." The petition also stated that a true and correct copy of the Contract was attached as Exhibit 1. After Adams Concrete counterclaimed for breach of contract based on that same contract, Exhibit 1, the City asserted an affirmative defense:

> The terms of Exhibit 1, to the extent they purport to be a contract, are not enforceable as to the City pursuant to the terms of § 432.070, RSMo., for the reason that **the Board of Aldermen of the City did not approve said agreement by ordinance duly adopted by the Board of Aldermen** and the agreement is therefore void ab initio. [Emphasis added.]

The bolded portion above is a statement of fact asserted by the City in its pleading. Following the factual allegation that the Board did not approve said agreement (Exhibit 1) by ordinance, the City asserted a legal conclusion that the contract represented by Exhibit 1, therefore, was void ab initio.

█ Allegations or admissions of fact contained in the pleadings of a case generally are binding on the pleader. Rauch Lumber Co. v. Medallion Dev. Corp., 808 S.W.2d 10, 12 (Mo. App. E.D. 1991) (citing Sayers v. Bagcraft Corp. of Am., Inc., 597 S.W.2d 280, 282 (Mo. App. S.D. 1980)).

█ We note, however, that Rule 55.10 [4] allows a party to plead in the alternative and to state inconsistent claims and defenses. Consistent with this allowance for pleading inconsistent legal theories, parties may plead inconsistent facts, but only if those inconsistent factual allegations are made in good faith and based on genuine doubt. Rauch Lumber Co., 808 S.W.2d at 12. In stating alternative facts made in good faith and based on genuine doubt, the pleader admits nothing but uncertainty about the actual facts. Stamatiou v. El Greco Studios, Inc., 898 S.W.2d 571, 574 (Mo. App. W.D. 1995). Ideally, the pleader will make clear that an allegation is in the alternative. Mays-Maune & Assocs., Inc. v. Werner Bros., Inc., 139 S.W.3d 201, 207 (Mo. App. E.D. 2004). However, the alternative nature of the alleged facts may be reasonably inferred from the context of the pleadings. Id. at 208.

We find no basis in the record to release the City from the legal effect of its express factual assertion that the Board did not approve Exhibit 1 by ordinance. We are not persuaded that the City was pleading the facts relating to Exhibit 1 in the alternative. The City argues on appeal that the Board approved Exhibit 1 by ordinance as applied to Count VI of its petition, but that the Board did *not* approve Exhibit 1 as it applied to Adams Concrete's counterclaim. We find this argument disingenuous and not supported by the record. The City cannot, in good faith and based on genuine

doubt, have it both ways. The City was in the position to know, or easily find out, whether or not its own Board approved Exhibit 1. We are not persuaded that the City has a genuine doubt as to whether its own Board approved Exhibit 1 by ordinance.

The City argues that the ordinance it claims serves as authority for the purchase of bricks for the Parks Building was Ordinance No. 1351. However, the City alleges in its petition that this ordinance relates to the "new City Hall." Importantly, the City does not allege in its petition that the "Annex Building" that is the subject of Exhibit 1 is the "new City Hall" referenced in Ordinance No. 1351. Under Section 432.070, the Board's approval must sufficiently identify the subject matter under consideration with reasonable exactitude and specificity. State Highway Comm'n v. City of Sullivan, 520 S.W.2d 186, 190 (Mo. App St. Louis 1975). Accepting the language used by the City in its petition, Ordinance No. 1351 approved the City's construction-management agreement only "in relation to the design and construction of a new City Hall." On the face of the petition, Ordnance No. 1351 fails to authorize, with the required exactitude and specificity, the City's authority to enter into contracts related to the Parks Building. The City's pleadings, when considered in their totality, do not suggest that the City has pleaded alternative theories of recovery. To the contrary, the pleadings suggest that Exhibit 1 is an agreement separate from the agreement authorized under Ordinance No. 1351, which is entirely consistent with the City's affirmative defense.

The Board either approved the writing attached as Exhibit 1 by ordinance or it did not. The City cannot plead this fact alternatively in good faith. Thus, the City is bound by its factual assertion that the

---

4. All rule references are to Mo. R. Civ. P. (2016).

Board of Alderman did not approve Exhibit 1 by ordinance.[5]

## II. The trial court properly granted judgment on the pleadings, rejecting the City's claim and Adams Concrete's counterclaim, both of which asserted a breach of contract based on Exhibit 1.

The City's pleadings acknowledge that the Board never approved Exhibit 1 by ordinance. We now determine whether the trial court properly granted judgment on the pleadings in light of that pleaded fact. The trial court ruled in favor of Adams Concrete on Count VI of the City's petition, and also dismissed Adams Concrete's counterclaim against the City. Importantly, Exhibit 1 was alleged by both parties to be the contract upon which their respective claims were based.

A contract entered into with a municipality that fails to comply with Section 432.070 is void ab initio, not merely voidable. Kindred v. City of Smithville, 292 S.W.3d 420, 424 (Mo. App. W.D. 2009). Section 432.070 states:

> No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and **such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.** [Emphasis added.]

Section 432.070 requires that the contract *and* the underlying authority for the contract be in writing. Moynihan v. City of Manchester, 265 S.W.3d 350, 354 (Mo. App. E.D. 2008). Even if a contract is in writing and signed by an agent of the city—such as a mayor—the contract is not valid unless duly authorized by the Board of Aldermen. Id. Absent authorization by the Board of Aldermen, no valid contract exists. Id. Where no statute requires the passage of an ordinance to authorize a contract, it is sufficient, but necessary, that the authorization be entered of record upon the minutes of the Board of Aldermen. Bd. of Pub. Works of Rolla v. Sho-Me Power Corp., 362 Mo. 730, 244 S.W.2d 55, 60 (Mo. banc 1951). Moreover, the authorization by the Board of Aldermen must not be vague and uncertain; rather, it must sufficiently identify the subject matter under consideration with reasonable exactitude and specificity. State Highway Comm'n, 520 S.W.2d at 190.

To validate the mutual duties and obligations of the parties, the City's Board of Alderman was required to authorize the purported contract at issue, here, Exhibit 1. It is undisputed that Exhibit 1 was the basis for both the City's claim and Adams Concrete's counterclaim for breach of contract. In moving for judgment on the pleadings, Adams Concrete accepted the well-pleaded facts of the City's own pleadings. The City alleges in its petition that Exhibit 1 is the contract breached by Adams Concrete, but later affirmatively asserts in its pleadings that the Board did not approve by ordinance the terms of Exhibit 1, "to the extent they purport to be a contract." The record does not show, nor is there any suggestion in any pleading, that the Board's authorization for the

---

5. The City's pleadings do not suggest that the Board approved Exhibit 1 by ordinance, but limited its approval only to the purchase of brick. The affirmative defense merely states that the Board did not approve the terms of Exhibit 1. The City did not limit the scope of its affirmative defense as it relates to Exhibit 1.

agreement premised upon Exhibit 1 was contained in a minute entry or some other formal record of the Board's actions. Accepting the City's own pleadings as true, the trial court properly found that Exhibit 1 was void ab initio for failing to comply with Section 432.070.

Accordingly, the trial court properly granted judgment on the pleadings. Adams Concrete was entitled to judgment as a matter of law on the City's claim against Adams Concrete for breach of contract. Similarly, the trial court properly dismissed Adams Concrete's claim against the City for breach of contract. Because the contract—Exhibit 1—was void ab initio as a matter of law, it could not support either claim. See The Lamar Co., LLC v. City of Columbia, 512 S.W.3d 774, 783 (Mo. App. W.D. 2016) (a contract that does not satisfy Section 432.070 is "wholly void" and "of no legal effect.").

### III. The City's arguments to the contrary are unavailing.

In a post hoc rationalization of its pleadings, the City suggests that Exhibit 1 represents two separate agreements. This rationalization is presented in the City's first point on appeal. First, the City alleges a contract *for the procurement of bricks* with Adams Concrete (page 2 of Exhibit 1), which was approved by the Board and supports its breach-of-contract claim. Second, the City posits that Adams Concrete's counterclaim alleges a contract *for the construction of the Parks Building* (page 1 of Exhibit 1), which the City contends was not approved by the Board.

The City's argument fails under the weight of its own pleadings. Initially we note that the City's petition alleged the existence of "an" agreement with Adams

Concrete, which the City defined as "the Contract." The contract alleged by the City was the writing attached to the petition as Exhibit 1. The City's affirmative defense stated that the terms of Exhibit 1, to the extent they purported to be "a contract," were not approved by the City's Board. The City's pleadings do not state or otherwise suggest that Exhibit 1 represents two separate agreements. The City's affirmative defense does not suggest that the legal defense *applied only* to a purported contract *for construction of the Parks Building.* The City's pleadings merely discuss "the Contract" and identify Exhibit 1 as that contract.

The City attached Exhibit 1 to its petition as the "true and correct copy of the Contract." See Rule 55.22 (when a claim is founded on a written instrument, the pleader can attach the written instrument as an exhibit). The City did not limit the scope of Exhibit 1 either in its petition or in its affirmative defense to Adams Concrete's counterclaim. The written terms of Exhibit 1 state that Adams Concrete would provide "[a]ll qualified labor, material, equipment and supervision." This language clearly suggests that Exhibit 1 is a fully integrated agreement, which includes both the provision of bricks (the City's claim—the material) and services related to the construction of the Parks Building (Adams Concrete's counterclaim—the labor, equipment, and supervision).[6]

The City further argues that, regardless of its affirmative defense, its petition adequately alleges a valid contract under Section 432.070, and that the trial court erred in looking beyond its allegations of its petition when granting judgment in the pleadings. According to this argument, the City enacted Ordinance No.

---

**6.** As previously noted, the pleadings suggest that the City treated the contractual obligations relating to the new city hall separate

from Exhibit 1, which relates only to the Annex Building. The distinction between the projects does not impact the integration of

1351, which authorized the City to enter into a written agreement with Studio One for construction-management services for the construction of the new city hall. The City then entered into that construction-management agreement with Studio One. The City argues that its construction-management agreement with Studio One provided the requisite authorization for the City to contract with Adams Concrete to purchase bricks for the new city hall and Parks Building (Exhibit 1).

We reject the City's contention. As previously noted, the ordinance as pleaded by the City makes absolutely no reference to the Annex Building that is the express subject of Exhibit 1. The City is bound by and cannot now abandon its pleaded factual allegation that its Board did not approve, by ordinance, the terms of Exhibit 1 as a contract.

Finally, in Point Two, the City argues that the trial court erred by improperly relying on factual allegations outside of its petition and which are included in Adams Concrete's counterclaims. The trial court's reliance on the movant's pleadings, the City argues, violates the standard employed in deciding motions for judgment on the pleadings. The City correctly notes that a trial court errs if it grants judgment on the pleadings based on facts only alleged in the movant's pleadings. In re Marriage of Busch, 310 S.W.3d at 260. However, the City's argument falters because the trial court relied upon facts contained in the City's pleadings—its petition and its reply to the counterclaim—not Adams Concrete's counterclaim. See McIntosh v. Foulke, 360 Mo. 481, 228 S.W.2d 757, 761 (Mo. 1950) (recognizing that judgment on the pleadings is proper if based on an admission in the non-movant's reply pleading). The factual assertions,

which mandate judgment on the pleadings, are contained in the City's petition and the City's affirmative defense to Adams Concrete's counterclaim. The trial court was entitled to consider all of the City's pleadings, not merely the City's petition. Based on the factual allegations contained within the City's own pleadings, the contract evidenced by Exhibit 1 was void ab initio as a matter of law. Accordingly, the trial court properly granted judgment on the pleadings. Points One and Two are denied.

### Conclusion

The judgment of the trial court is affirmed.

James M. Dowd, P.J., and Gary M. Gaertner, Jr., J., concur.

---

Exhibit 1 as one agreement addressing the parties' respective obligations relating to the

Parks Building.