

# In the Missouri Court of Appeals
# Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| PUBLIC SCHOOL RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, ET AL., | ) ) ) | No. ED108450 |
| Appellants, | ) ) | Appeal from the Circuit Court of the City of St. Louis |
| vs. | ) ) | Honorable Michael F. Stelzer |
| STATE OF MISSOURI, ET AL., | ) ) | |
| Respondents. | ) | FILED: August 11, 2020 |

**Introduction**

This case arises out of recent legislative changes to statutes pertaining to public employee retirement. Appellants Public School Retirement System of the City of St. Louis, Board of Trustees of the Public School Retirement System of the City of St. Louis, Joseph W.B. Clark, Jr. and William Andrew Clark[1] (collectively, "the Retirement System") appeal from the circuit court's Order and Judgment in favor of Defendants Special Administrative Board of the Transitional School District of the City of St. Louis and St. Louis Public Schools (collectively, "School District"), Confluence Academy, Inc. ("Confluence"), and the State of Missouri ("the State"). The Retirement System asserts that the circuit court erred in concluding (1) that the legislative changes to retirement eligibility requirements do not constitute a benefit increase, supplement or

---

[1] Joseph W.B. Clark Jr. was the Chairman of the Board of Trustees for the Retirement System at the time the Second Amended Petition was filed. William Andrew Clark is the Executive Director of the Retirement System.

enhancement under Section 105.684,[2] (2) that the Retirement System is not an "other political subdivision" entitled to the protections of Missouri's Hancock Amendment, and (3) that while Section 169.597 provides the Retirement System with standing to bring a declaratory judgment action relating to the Hancock Amendment, it does not grant the Retirement System the substantive protections of the Hancock Amendment. We affirm.

## Factual and Procedural History

In May 2017, the Missouri Legislature passed Truly Agreed to and Finally Passed Senate Bill 62 ("TAFP SB 62"), which was signed into law in July 2017. TAFP SB 62 repealed fourteen sections and enacted fifteen new sections relating to public employee retirement. Among other things, TAFP SB 62 modified the retirement eligibility requirements for public school teachers and the employer contribution formula of the Public School Retirement System of the City of St. Louis. Prior to the changes contained in TAFP SB 62, eligibility for retirement benefits was governed by what was known as "the Rule of 85," which meant members of the Retirement System were eligible for normal pension benefits when their ages and years of credited service totaled a sum of not less than 85. TAFP SB 62 changed that eligibility threshold from 85 to 80 ("the Rule of 80"). Section 169.460.1, RSMo Supp. 2018.

The Public School Retirement System of the City of St. Louis is the statutory retirement system for certain employees of the St. Louis Public Schools and of charter schools operating in the City of St. Louis. Following the passage of TAFP SB 62, the Retirement System filed an action in the Circuit Court of the City of St. Louis seeking a declaratory judgment and preliminary and permanent injunctions. Named as defendants in the petition were Defendant Confluence, which operates a charter school system, and Defendant School District, both of which submit

---

[2] All statutory references are to RSMo 2016, unless otherwise indicated.

contributions to the Retirement System on behalf of participant employees. The State was also named as a defendant as it, through various officers, enacted and intends to enforce the provisions of the law at issue.

Count I of the Retirement System's Second Amended Petition sought a declaration that TAFP SB 62's change from the Rule of 85 to the Rule of 80 cannot become effective until the Retirement System's actuary makes certain findings pursuant to Sections 105.660 through 105.685. Counts II and III alleged that TAFP SB 62 violates the Hancock Amendment by creating an unfunded mandate and by reducing the state-financed proportion of the costs of an existing activity or service. Finally, Count IV alleged that TAFP SB 62 violates the "original purpose" clause of Article III, Section 21, of the Missouri Constitution.

The State moved for judgment on the pleadings as to all four counts of the Second Amended Petition. Defendants Confluence and School District joined as to Counts II through IV. The Retirement System also filed a motion for summary judgment. The circuit court granted the Defendants' motions for judgment on the pleadings and denied the Retirement System's motion for summary judgment. The Retirement System subsequently filed this appeal with respect to Counts I through III, but does not appeal the circuit court's judgment as to Count IV.

**Discussion**

All three of the Retirement System's points relied on challenge the circuit court's Order and Judgment, which granted the motions for judgment on the pleadings filed by Defendants. "Judgment on the pleadings addresses a question of law, which we review de novo." *City of Dardenne Prairie v. Adams Concrete and Masonry, LLC*, 529 S.W.3d 12, 17 (Mo. App. E.D. 2017). "For the purposes of the motion, the moving party admits the truth of all well-pleaded facts in the opposing party's pleadings." *Id.* Similar to a motion to dismiss, a motion for judgment on

the pleadings will only be granted when, "assuming the facts pleaded by the opposite party to be true, these facts nevertheless are insufficient to warrant relief as a matter of law." *Id*. This Court will affirm a judgment on the pleadings "only where under the conceded facts, a judgment different from that pronounced could not be rendered notwithstanding any evidence which might be produced." *Id*. (quoting *Armstrong v. Cape Girardeau Physician Assocs.*, 49 S.W.3d 821, 824 (Mo. App. E.D. 2001)).

## I.      Claim Relating to Section 105.684

In its first point, the Retirement System argues that the circuit court erred in concluding that Section 105.684, which prohibits certain benefit increases unless specific conditions are met, is inapplicable to TAFP SB 62 and its change from the Rule of 85 to the Rule of 80. The circuit court reasoned that Section 105.684 does not apply because the change did not constitute a benefit increase, supplement or enhancement.

"The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." *Donaldson v. Crawford*, 230 S.W.3d 340, 342 (Mo. banc 2007). "The plain meaning of words, as found in the dictionary, will be used unless the legislature provides a different definition." *Lincoln Indus., Inc. v. Dir. of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001).

Section 105.684.1 provides, in relevant part:

> Notwithstanding any law to the contrary, no plan shall adopt or implement any additional benefit increase, supplement, enhancement, lump sum benefit payments to participants, or cost-of-living adjustment beyond current plan provisions in effect prior to August 28, 2007, which would, in aggregate with any other proposed plan provisions, increase the plan's actuarial accrued liability when valued by an actuary using the same methods and assumptions as used in the most recent periodic valuation, unless the plan's actuary determines that the funded ratio of the most recent periodic actuarial valuation and prior to such adoption or implementation is at least eighty percent and will not be less than seventy-five percent after such adoption or implementation.

4

The Retirement System contends that the change to the Rule of 80 is an additional "benefit increase, supplement, [or] enhancement" under Section 105.684, and therefore, it cannot take effect until its actuary makes certain findings. Chapter 105 does not define "benefit increase, supplement, [or] enhancement." Accordingly, this Court will apply the ordinary meaning as found in the dictionary. *See Lincoln Indus., Inc.*, 51 S.W.3d at 465.

The term "benefit" is defined as "a cash payment or service provided for under an annuity, pension plan, or insurance policy." WEBSTER'S THIRD NEW INT'L DICT. 204 (3d ed. 2002). Here, the change to the Rule of 80 does not increase, supplement or enhance the amount of the "cash payment or service" that eligible retirees receive under the plan, but instead only changes the eligibility criteria for those benefits. Therefore, Section 105.684 is inapplicable to TAFP SB 62's change to the Rule of 80.

The Retirement System contends that the change to the Rule of 80 has resulted in some members receiving an increase in their benefit amounts. Specifically, the Retirement System points to certain members who previously received early pension benefits under the Rule of 85 but who are now eligible for a normal pension under the Rule of 80. Under the Rule of 85, those members (whose ages and years of credited service totaled between 80 and 84) received an early pension with the benefits reduced by an early retirement penalty. *See* Section 169.460.3. Now, under the Rule of 80, those members receive a normal pension, which the Retirement System characterizes as a benefit increase. In other words, the Retirement System contends that the benefits to these members have increased in that they now receive more money since their benefits are no longer reduced by the early retirement penalty. Contrary to the Retirement System's assertion, earlier access to normal pension benefits does not constitute a "benefit increase, supplement, [or] enhancement." Again, the change to the Rule of 80 does not increase the rate of

5

a member's retirement benefits; it simply modifies the eligibility requirements under which members can receive their normal benefits. In other words, the change simply allows members to retire earlier if they meet necessary conditions.

The Retirement System also argues that the change to the Rule of 80 will increase the benefits paid out by the Retirement System as a whole. Specifically, the Retirement System points to a "cost statement" in which its actuary calculated that the present value of future benefit payments in 2017 increased by over $22,000,000 as a result of the change to the Rule of 80. The Retirement System also contends that, because this allegation was contained in its Second Amended Petition, a fact issue precluded entry of judgment on the pleadings. To the contrary, even assuming the truth of the "cost statement" and its exhibits, Defendants were still entitled to judgment on the pleadings because the financial impact resulting from the change to the Rule of 80 is due to earlier member accessibility to the same benefits and does not arise out of an "increase, supplement, [or] enhancement" of the benefits themselves.[3]

Point I is denied.

## II. Hancock Amendment Claims

In its remaining two points, the Retirement System argues that the circuit court erred in concluding that the Retirement System is not entitled to the protections of Missouri's Hancock Amendment.[4] In relevant part, the Hancock Amendment states:

---

[3] The Retirement System also alleged that the expansion of normal retirement eligibility from the Rule of 85 to the Rule of 80 constituted a "substantial proposed change in plan benefits" under Section 105.685, which could not become effective until compliance with all of the conditions in Sections 105.660 to 105.685. We agree with the circuit court that, because the change to the Rule of 80 is not a "benefit increase, supplement, [or] enhancement" under Section 105.684, it is not necessary to address this argument.

[4] Confluence raises the issue of this Court's jurisdiction in light of the fact that the Retirement System's Second Amended Petition alleged that TAFP SB 62 violates the Hancock Amendment. The Retirement System and the State agree that jurisdiction is proper in this Court. In *Breitenfeld v. Sch. Dist. of Clayton*, 399 S.W.3d 816, 820 n.3 (Mo. banc 2013), the Supreme Court of Missouri recognized that "a challenge to a statute premised on the Hancock Amendment's prohibition against unfunded mandates does not invoke [the Supreme Court's] exclusive jurisdiction [because] the remedy is not the total invalidation of the statute as unconstitutional but rather the entry of a declaratory

6

> The state is hereby prohibited from reducing the state financed proportion of the costs of any existing activity or service required of counties and other political subdivisions. A new activity or service or an increase in the level of any activity or service beyond that required by existing law shall not be required by the general assembly or any state agency of counties or other political subdivisions, unless a state appropriation is made and disbursed to pay the county or other political subdivision for any increased costs.

Mo. Const. art. X, sec. 21.

"This portion of the Hancock Amendment is violated if both (1) the State requires a new or increased activity or service of a political subdivision and (2) the political subdivision experiences increased costs in performing that activity or service without funding from the State." *Neske v. City of St. Louis*, 218 S.W.3d 417, 422 (Mo. banc 2007), *overruled on other grounds by King-Willmann v. Webster Groves Sch. Dist.*, 361 S.W.3d 414, 417 n.4 (Mo. banc 2012).

The Retirement System argues that the circuit court erred in finding that it is not an "other political subdivision" entitled to protection under the Hancock Amendment. Specifically, the Retirement System challenges the circuit court's conclusion that, because the Retirement System does not have the power to tax, it does not qualify as a "political subdivision."

The Hancock Amendment applies to "counties and other political subdivisions." Mo. Const. art. X, sec. 21. The Missouri Constitution defines "other political subdivisions" as that term is used in the Hancock Amendment:

> The term "other political subdivision," as used in this article, shall be construed to include townships, cities, towns, villages, school, road, drainage, sewer and levee districts and any other public subdivision, public corporation or public quasi-corporation having the power to tax.

Mo. Const. art. X, sec. 15.

---

judgment that relieves the duty to perform the state-mandated activity or service at issue." Accordingly, this Court has jurisdiction.

Missouri courts have long held that public and quasi-public entities without the power to tax are not "political subdivisions" for purposes of Article X of the Missouri Constitution. *See State ex rel. Wagner v. St. Louis Cty. Port Auth.*, 604 S.W.2d 592, 604 (Mo. banc 1980) (holding that "an authority without the power to tax does not fall within the definition of [Section] 15 and therefore is not a political subdivision"); *Menorah Med. Ctr. v. Health and Educ. Facilities Auth.*, 584 S.W.2d 73, 81 (Mo. banc 1979) ("[T]he Authority is not a 'political subdivision' within the definition of [Section 15] since the Authority does not have the power to tax."); *State ex rel. Jardon v. Indus. Dev. Auth. of Jasper Cty.*, 570 S.W.2d 666, 677 (Mo. banc 1978) ("To put it simply, the Authority lacks the power to tax; therefore, it is not a political subdivision under the terms of Article X."); *see also Champ v. Poelker*, 755 S.W.2d 383, 388 (Mo. App. E.D. 1988).

The Retirement System argues that these cases are inapposite because they merely hold that "authorities" must have the power to tax in order to qualify as a "political subdivision." It is clear, however, that the entities' status as "authorities" was not determinative of the holdings of those cases. Indeed, those entities had little in common other than that they all had the word "authority" in their names. Moreover, Article X, Section 15, does not mention "authorities," but only "public subdivision[s], public corporation[s] [and] public quasi-corporation[s]."

The Retirement System also argues that the "power to tax" requirement only applies to a "public quasi-corporation" and does not pertain to an "other political subdivision" or a "public corporation." Specifically, the Retirement System contends that the phrase "having the power to tax" only modifies "public quasi-corporation," rather than the entire phrase beginning with "and any other." The Retirement System's proposed interpretation, however, contradicts the plain language of the provision. When a modifier (such as "having the power to tax") comes after a list of three similar items, the modifier typically modifies all three items, not just the last item. "When

8

there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 147 (2012); *see also Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 688 (Mo. banc 2010). Therefore, the modifier "having the power to tax" applies to all three of the noun phrases that immediately precede it in a list: "public subdivision," "public corporation," and "public quasi-corporation." Mo. Const. art. X, sec. 15.

The Retirement System also points to language in *Bi-State Dev. Agency of the Missouri-Illinois Metro. Dist. v. Dir. of Revenue*, 781 S.W.2d 80, 83 (Mo. banc 1989), where the Supreme Court stated, "The question of whether a political subdivision must in all instances have the power to tax is not before the Court in this case." *Bi-State*, however, did not contradict the clear "power to tax" requirement set forth in *Jardon, Wagner* and *Menorah*. Further, in the *Bi-State* case, Bi-State conceded that it did not have the power to tax and did not dispute that its lack of taxing power precluded it from being deemed a "political subdivision" under Missouri law. *Id*.

In sum, because the Retirement System does not have the power to tax, it is not an "other political subdivision" within the meaning of Article X, Section 15, and as such, is not entitled to the protections of the Hancock Amendment.

The Retirement System also contends that even if it is not a "political subdivision" under the Hancock Amendment, it is still granted the same substantive rights under Section 169.597, which provides the Retirement System with standing to bring a Hancock Amendment claim.

Section 169.597 grants the board of trustees of any retirement system standing to bring a declaratory judgment action concerning the application of the Hancock Amendment. Specifically, Section 169.597 provides:

9

Notwithstanding any provision of this chapter to the contrary, the board of trustees of any retirement system or the governing body of any political subdivision which funds such retirement system shall have standing to seek a declaratory judgment concerning the application of Article X, Section 21 of the Missouri Constitution to the provisions of this chapter. In the event a final judgment is rendered by a court which judgment determines that any provision of this chapter constitutes a new activity or service or increase in the level of an activity or service beyond that required by existing law pursuant to Article X, Section 21 of the Missouri Constitution, or any successor to that section, that provision of this chapter shall be void ab initio and any new benefit or feature required by such provision of this chapter shall be deemed not to have accrued and shall not be payable to members.

According to the Retirement System, because Section 169.597 grants retirement systems standing to bring a declaratory judgment action "concerning the application of [the Hancock Amendment] to the provisions of [Chapter 169]," it also entitles retirement systems to the protections of the Hancock Amendment. The Retirement System relies on the principle that to "have standing, the party seeking relief must have 'a legally cognizable interest' and 'a threatened or real injury.'" *Manzara v. State*, 343 S.W.3d 656, 659 (Mo. banc 2011) (quoting *E. Mo. Laborers Dist. Council v. St. Louis Cty.*, 781 S.W.2d 43, 46 (Mo. banc 1989)).

Contrary to the Retirement System's assertion, the statute does not expand the substantive protections of the Hancock Amendment to retirement systems. Instead, the statute simply grants standing to seek a declaratory judgment regarding the "application of" the Hancock Amendment. Section 169.597. Nothing in the statute expands or modifies the entities that receive protection under the Hancock Amendment. "We cannot engraft language onto a statute that was not provided by the legislature." *State ex rel. Koster v. Cowin*, 390 S.W.3d 239, 244 (Mo. App. W.D. 2013). A grant of standing but not substantive protection is not inconsistent with other constitutional provisions relating to the Hancock Amendment. Although every Missouri taxpayer has standing to bring suit to enforce the Hancock Amendment, obviously not all Missouri taxpayers are

"political subdivisions" that enjoy the substantive protections of the Hancock Amendment. *See* Mo. Const. art. X, sec. 23.

Section 169.597 allows retirement systems to bring suits relating to the Hancock Amendment similar to the way taxpayers can bring such suits under Article X, Section 23, of the Missouri Constitution. For instance, under Section 169.597, a retirement system can bring an action seeking a declaratory judgment as to the application of the Hancock Amendment to its funding political subdivision. It is important to note that Section 169.597 grants standing to two separate entities: (1) "the board of trustees of any retirement system," and (2) "the governing body of any political subdivision which funds such retirement system." The statute permits either one of these entities to bring a declaratory judgment action "concerning the application of [the Hancock Amendment] to the provisions of [Chapter 169]." These two entities represent the necessary adverse parties in any declaratory judgment action properly brought under Section 169.597. "A declaratory judgment provides guidance to the parties, declaring their rights and obligations or otherwise governing their relationship." *Shipley v. Cates*, 200 S.W.3d 529, 534 (Mo. banc 2006). Section 169.597 allows a retirement system (or its funding political subdivision) to seek a declaratory judgment regarding whether any provision of Chapter 169 violates the Hancock Amendment's protections of the funding political subdivision.

The Retirement System contends that Section 169.597 specifically provides it with the ability to assert that an increase in benefits violates the Hancock Amendment and that if such a violation is shown "that provision of [Chapter 169] shall be void ab initio and any new benefit or feature required by such provision…shall be deemed not to have accrued and shall not be payable to members." Section 169.597. According to the Retirement System, since the entities that pay out benefits under Chapter 169 are public retirement plans, the statute must provide them with the

11

substantive protections of the Hancock Amendment or this provision would be "meaningless." To the contrary, this remedy would apply if the legislature passed a statute requiring a retirement system to distribute a new benefit to its members and directing its funding political subdivision to pay for it. In that circumstance, if a court were to determine that the new benefit was a "new activity or service" in violation of the political subdivision's Hancock Amendment protections, then the remedy set forth in Section 169.597 would apply. Thus, the provisions of Section 169.597 are not "meaningless" even though retirement systems themselves are not "political subdivisions" entitled to the Hancock Amendment's protections.[5]

Points II and III are denied.

## Conclusion

For the foregoing reasons, the judgment is affirmed.

_____
MICHAEL E. GARDNER, Judge

Robert G. Dowd, Jr., C.J., concurs.
Robert M. Clayton III, P.J., concurs.

---

[5] The Retirement System argues at length that it is within the plenary power of the legislature to grant retirement systems rights identical to political subdivisions under the Hancock Amendment. It is not necessary for the Court to analyze whether it would be within the legislature's plenary power to grant retirement systems those rights because the legislature did not do so in Section 169.597.